569 So.2d 671 (1990)
STATE of Louisiana, Appellee,
v.
George Eugene ROBERTS, Appellant.
No. 21,884-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*672 Geary S. Aycock, and Joseph Abraham, Jr., West Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., William R. Coenen, Jr., Dist. Atty., Penny Wise-Douciere Asst. Dist. Atty., Rayville, for appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
The defendant, George Eugene Roberts, was charged by bill of information in Richland Parish with knowingly or intentionally possessing 60 lbs. or more, but less than 2,000 lbs., of marijuana. LSA-R.S. 40:966 E(1). His nephew, Jerry Ruth, was charged as codefendant on the same bill. At arraignment, defendants were represented by counsel from West Monroe. Shortly afterward, an attorney from Roberts's hometown of El Paso, Texas filed a motion to enroll as counsel of record in association with local counsel. The trial court took no action on this motion. Several continuances were granted, first because the state had not yet complied with discovery, later because Roberts suffered a heart attack in January 1989 and finally because of a conflict in the Texas counsel's trial schedule. A few days before the trial in September 1989, the defendants appeared in district court with their Texas attorney, whom they designated as lead counsel, for hearings on motions to continue, quash and suppress; local counsel was also present. The district court refused to let Texas counsel represent the defendants. The court also denied the defense's motion for continuance, and the defendants proceeded through the hearings and trial with local counsel. The jury acquitted Ruth but found Roberts guilty as charged. The trial court subsequently sentenced Roberts to 15 years at hard labor, the maximum for this offense. Roberts now appeals, advancing 18 assignments of error. Two closely related arguments, dealing with the denial of counsel of choice and denial of continuance, present reversible error. We therefore reverse the conviction and sentence on these grounds, pretermit discussion of the other assignments, and remand the case for a new trial with counsel of the defendant's choice.

Facts and procedural history
Roberts and Ruth were arrested on April 28, 1988. Trooper Coleman stopped Roberts's pickup truck on Interstate 20 for a traffic offense. Ruth, who was driving at the time, was ticketed for following too close behind an 18-wheeler in a two-lane construction zone. Officer Coleman thought he smelled marijuana around the rear of the truck; he also thought Ruth and Roberts looked nervous and gave inconsistent statements about their destination; for these reasons Coleman asked Roberts for permission to search the truck. Roberts gave his consent. In the covered camper portion of the truck officers found two cardboard boxes containing 13 bales of marijuana tightly wrapped in duct tape. In the front seat officers found two loaded pistols partly concealed under seat cushions. Roberts, a 51-year old retired Army Master Sergeant and now a realtor and civic leader in El Paso, consistently denied knowing that the boxes contained contraband; he testified he thought he was hauling household goods as a favor for a fellow serviceman who had recently been transferred from El Paso to Norfolk, Virginia.
*673 The bill of information did not issue until August 17, 1988. On that date both defendants appeared for arraignment with retained counsel, Mr. Geary Aycock of West Monroe. They pled not guilty; Mr. Aycock filed various written motions, including a motion to suppress and motions for discovery and production. On September 16 Mr. Joseph Abraham of El Paso, a Texas attorney not licensed in Louisiana, filed a motion to enroll as counsel of record for both defendants. He later testified that shortly after their arrest, Roberts and Ruth retained him to defend this case; and that he got in contact with Mr. Aycock, who agreed to serve as local counsel and arrange for Mr. Abraham to enroll as lead counsel. There is no evidence in this record to contradict the defendants' assertion that they hired Mr. Abraham first and intended him to serve as lead counsel. The trial court, however, took no action on his motion to enroll at this time.
Pretrial motions were continued on several occasions. Hearing on the motion to suppress was continued on January 19 by joint motion, apparently because the state had not yet complied with the motions for discovery and production, and on February 14 without opposition by the state, apparently because Roberts had suffered a heart attack in January. See Minute Entry, 2/15/89, R. p. 2. The state filed its answer to discovery on March 23. Joint motions to continue were also granted on March 29 and June 29; the latter was granted because Mr. Abraham, designated as lead counsel, had a conflict in federal court. Also on June 29, hearings on the pending motions were set for September 13 and trial for September 18, 1989. Up to this point Mr. Aycock had handled all motions for continuance. On September 5, however, Mr. Abraham filed a motion to continue the trial, citing a conflict with his federal trial schedule for September 18 and 19, 1989. This motion was also set for hearing on September 13.
On September 13 the defendants and both counsel appeared in district court. Judge Chet Traylor was presiding; the case had been reassigned from Judge Glen Strong. Mr. Abraham stated that he had a trial in federal court on September 18 but he was otherwise ready to proceed with the motions.[1] The assistant district attorney, Ms. Douciere, argued that the case had been continued several times already, always as a "courtesy" to the defense, and that the state vehemently objected to any further continuance. Judge Traylor then asked Mr. Abraham if he was licensed to practice in Louisiana. Mr. Abraham said no, but explained he thought he had complied with all the requirements to practice in this case. The court told him peremptorily that he could not participate in the case. R.p. 127. The court then summarily denied the motion to continue without any articulation of reasons.
Later in the hearing on the motion to suppress, the court reiterated its ruling and firmly admonished Mr. Abraham, "You are not a licensed attorney in the State of Louisiana and you are not going to participate." R.p. 222. The court offered to let Mr. Abraham sit at counsel table and "consult" with Mr. Aycock, just as it was letting the district attorney, Mr. Coenen, "consult" with Ms. Douciere, but denied him any meaningful role in the defense. In fact, Mr. Coenen spoke up several times at the hearing; when Mr. Aycock objected that he was being "double teamed," the court remarked, "I can't see what harm it's doing." R.p. 221.
Mr. Aycock tried the remaining motions alone. The defendants' motion to suppress was denied; the state's motion to quash a defense subpoena was granted. Before trial began, Mr. Aycock filed additional defense motions to continue, to recuse Judge Traylor, to sever as to defendants and a supplemental motion to suppress the fruits of the search. Mr. Aycock argued that *674 because Mr. Abraham would not be allowed to participate, the defense needed time to secure additional counsel. These motions were denied.
At the hearing on the motion to recuse, Judge Strong presided. In support, Mr. Aycock testified to a conversation between himself and Judge Traylor outside the courtroom on September 13. According to Mr. Aycock, Judge Traylor told him he was not doing his clients any service by taking them to trial, and he would do better to have them plead guilty. Mr. Aycock replied that the offenses were so serious that even a guilty plea would result in hard time. According to Mr. Aycock, Judge Traylor replied that was true but perhaps they would draw a lesser sentence if they pled. When Mr. Aycock asked if he intended to impose a lesser sentence for a plea, Judge Traylor allegedly replied, "I can't say that, officially. Well, yes." R.p. 263. Mr. Aycock testified he immediately reported this to the district attorney, Mr. Coenen. Mr. Coenen testified that he could not recall the exact content of his conversation with Mr. Aycock, but Mr. Aycock was "disappointed" about it. Judge Traylor admitted that Mr. Aycock asked him if his clients would get a longer sentence if they went to trial. He also admitted saying, "I can't give you an official answer to that," but denied saying anything further. Judge Traylor felt that Mr. Aycock had deliberately broached the subject of a plea bargain and sentence cap in order to force the issue. Judge Strong commented that Mr. Aycock had approached him so often about the prospective sentences in this case that he (Judge Strong) hated to see him come around; he accepted that Mr. Aycock had attempted to set up the issue of a plea bargain with the judge and without Mr. Coenen's consent. Judge Strong concluded that Judge Traylor could be fair and unbiased in the case; the motion to recuse was denied. Judge Traylor heard the remaining defense motions and denied them all.
Jury selection proceeded and trial began on September 20. According to Mr. Abraham's affidavit, the federal trials that created the conflict had been resolved through plea bargains by that date and he would have been able to participate in the instant trial. As noted, the jury acquitted Jerry Ruth but found Eugene Roberts guilty by a vote of 10-2.

Discussion
By his first and fourth assignments Roberts urges the trial court erred in barring Mr. Abraham from participating in the proceedings and in denying the motion for continuance. The facts surrounding these rulings have already been summarized.
The United States Constitution guarantees that the accused in all criminal prosecutions shall have the assistance of counsel for his defense. USCA-Const. amends. 6, 14. The Supreme Court has further stated:
It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice. (emphasis added)
Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158, 84 A.L.R. 527 (1932).
The Louisiana Constitution of 1974 delineates these rights in Art. 1 § 13:
At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. (emphasis added)
See also State v. Seiss, 428 So.2d 444 (La. 1983); State v. Anthony, 347 So.2d 483 (La.1977); State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983). The pretrial hearing on a motion to suppress or to quash is a critical stage of the proceedings at which the right to counsel of one's choice attaches.
The right to the assistance of counsel is so fundamental to the constitutional guarantee of a fair trial that its denial is not considered harmless error. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). The right to choose one's own counsel when one can afford to do so is an essential component *675 of the sixth amendment because if a defendant were not provided with the opportunity to select his own counsel at his own expense, "substantial risk would arise that the basic trust between counsel and client, which is the cornerstone of the adversary system, would be undercut." Linton v. Perini, 656 F.2d 207, 209 (6th Cir. 1981). Naturally, the right to counsel of one's own choice must be exercised at a reasonable time and cannot be manipulated to obstruct the orderly procedure of the courts or to interfere with the fair administration of justice. Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); State v. Seiss, supra; State v. Broadway, supra. The sum of the jurisprudence is that the defendant has no right to make a new choice of counsel on the very day a criminal trial is to begin. State v. Leggett, 363 So.2d 434 (La.1978). However, an arbitrary denial of counsel of choice, made without any regard for the circumstances of the particular case, is a constitutional violation and reversible error per se. Fuller v. Diesslin, 868 F.2d 604 (3d Cir.1989), cert. denied ___ U.S. ___, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989); United States v. Romano, 849 F.2d 812 (3d Cir.1988).
We have closely scrutinized the facts and circumstances of this case and are constrained to conclude that the trial court's refusal to let Mr. Abraham participate in either the pretrial hearings or the trial itself was reversible error per se.
One critical factor that distinguishes this case from the sea of cases involving "eleventh hour" motions to change counsel is the simple fact Mr. Abraham filed his motion to enroll on September 16, 1988, almost one year before the instant pretrial hearings took place. The state had already acknowledged Mr. Abraham's right to participate by signing a joint continuance to accommodate his federal trial schedule. R.p. 43. It is illogical to argue that the motion was an untimely attempt to put off trial and thwart the orderly administration of justice. Moreover, the defendant was not requesting a continuance so Mr. Abraham could acquaint himself with the case; Mr. Abraham was present and prepared to try the important pretrial motions to quash and suppress. There was nothing in this case to suggest the enrollment of Mr. Abraham was an attempt to obstruct or interfere with justice.
The court did offer a "reason" for refusing to let Mr. Abraham participate in the proceedings. Noting that only the court could give permission to practice law in the case, the court stated that excluding out of state attorneys was a "practice of this court ever since I've been on the bench and as far as I know long prior to my ever coming on the bench." R.p. 245. We have scoured the Rules of the Fifth Judicial District Court and the Supreme Court Rules and we can find no rule to justify barring an out of state lawyer who has associated with local counsel. In fact, state law holds to the contrary. There is a specific provision for the practice of law by out of state ("visiting") attorneys. LSA-R.S. 37:214 provides in part:
§ 214. Visiting attorneys of other states; reciprocity
Except as provided in this Section, no person licensed or qualified to practice as an attorney at law or as an attorney and counsellor at law in any other state and temporarily present in this state shall practice law in this state, unless he has first been duly licensed to practice law by the supreme court of this state or unless he acts in association with some attorney duly licensed to practice law by the supreme court of this state. (emphasis added)
The plain meaning is that a visiting attorney who has associated with a duly licensed Louisiana attorney should be permitted to practice law in the state. The United States Supreme Court has commented on the custom of allowing visiting attorneys to practice pro hac vice ("for this turn") and implied that state law should regulate the matter insofar as the visiting lawyer's rights are concerned. See Leis v. Flynt, 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979).
Our close examination of this record convinces us that even though Mr. Aycock had *676 filed most of the pretrial motions, Mr. Abraham associated with him and moved to enroll early in the proceedings and had thereby satisfied every requirement of state law to serve as lead counsel in this case.
Other matters listed in the minutes of trial court show that not only was the court's ruling arbitrary and erroneous, but the "practice" on which it relied was enforced selectively and prejudicially. On the very same day as the court denied Mr. Abraham's motion, a different division of the same court allowed a visiting attorney from South Carolina, a Mr. Quaire, to represent a defendant in association with local counsel, Mr. Stewart. See State v. Holmes and Fabian, trial court Nos. 50,684 and 50,685 (No. 21,545-KW on the writ docket of this court). The state did not object and the court did not even question Mr. Quaire's qualifications. This incident, we feel, underscores the arbitrary nature of the court's ruling to exclude Mr. Abraham from the proceedings. The arbitrary denial of Roberts's counsel of choice in the pretrial motions was reversible error.
The ruling on Mr. Abraham's motion to continue the trial is inextricably related to the ruling excluding him from the case. Once the trial court summarily denied Mr. Abraham's right to participate in the case, then his schedule conflict was of no concern to the court. And with Mr. Abraham barred from the proceedings, the grounds of continuance were undermined and the issue moot. As a general rule, the matter of continuance is within the trial court's wide discretion. Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); State v. Gentry, 462 So.2d 624 (La. 1985). If the review of a denial of continuance occurs on appeal after judgment, the defendant must usually show prejudice from the ruling. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983). However, the trial court may not rigidly insist on expeditiousness in the face of a reasonable request for delay. In Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the supreme court noted the constitutional implications:
[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 [1954]. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 [1957.] 376 U.S. at 589, 84 S.Ct. at 849-850.
Plainly each case turns on its own facts and the trial court's decision to grant or deny continuance balances a defendant's right to counsel of his choice against the public's interest in the orderly administration of justice. Federal courts have adopted a balancing test. United States v. Burton, 584 F.2d 485 (D.C.Cir.1978). The state in brief has attempted to summarize the procedural history of the instant case and show that a proper analysis would support the denial of continuance. This studied effort is valiant but it overlooks the glaring fact that the court denied Roberts the constitutional right of counsel of his choice. By belatedly denying the motion to enroll, the court mooted the motion for continuance and foreclosed all consideration of the delicate balancing that should attend the resolution of the motion for continuance. For instance, the court did not consider whether Mr. Abraham might have made other arrangements for his federal trials, thus obviating the need to continue Roberts's trial. According to the affidavit, Mr. Abraham could have done this had he been allowed to participate. The motion was certainly brought for legitimate reasons; Roberts wanted his lead counsel to defend him. Linton v. Perini, supra. True, several continuances had already been granted, but these were with the state's consent and for good cause. The defendant was not at all responsible for the unexpected denial of the motion to enroll. *677 There is always some inconvenience in resetting trial, but to address the primary one urged by the state, we perceive no major problem with shipping or guarding the contraband. On September 13, when the motion was denied, the bulky evidence had not yet been sent to the courthouse and would not have to be until the trial began.
While we will accord the trial court great deference in ruling on motions to continue, we find that the circumstances of this case, notably the effect of the erroneous exclusion of Mr. Abraham, mandate a finding that the court did not perform the minimal balancing necessary to support a denial of continuance. This is inextricably bound with the arbitrary and erroneous denial of counsel of choice. Fuller v. Diesslin, supra; United States v. Romano, supra. The judgment will be reversed.
By our holding in this case we would not imply that every request for counsel will give rise to constitutional error. Indeed, the trial court has wide discretion to weigh the competing rights of the litigant and the public. See Wheat v. United States, supra. A last-minute motion for continuance in order to retain out of state lead counsel will usually be viewed as dilatory. It is more significant, however, that visiting lead counsel had filed a motion to enroll one year before trial, and we view the ruling rather than the request as untimely. The belated exclusion of Mr. Abraham from the proceedings, under color of "court practice," was parochial, erroneous and violative of the defendant's constitutional rights. Prejudice is presumed. Holloway v. Arkansas, supra; Fuller v. Diesslin, supra. The related summary denial of continuance, as both a cause and effect of the sixth amendment violation, was an abuse of discretion. The remedy is to reverse Roberts's conviction and sentence and remand the case for a new trial with counsel of his choice.
Discussion of the other assignments of error is pretermitted.
CONVICTION AND SENTENCE REVERSED. CASE REMANDED.
SEXTON, J., concurs.
NOTES
[1] In open court on September 13, Mr. Abraham did not exclude the possibility that he could seek a continuance in his federal trial. R.p. 125. By affidavit filed in December 1989, he averred that he was present to try the motions on September 13 and if he had been permitted to participate in the trial he could have sought a continuance in the federal trials which created the conflict. R.p.p. 118-120.