# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 07-914


**STATE OF LOUISIANA**

**VERSUS**

**JOSEPH THOMAS SAVOIE**
**AKA JOSEPH TOMMY SAVOIE**
**AKA JOSEPH THOMAS SAVOY**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 105492
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## BILLY HOWARD EZELL
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.


**AFFIRMED.**


**James Edward Beal**
**LA. Appellate Project**
**P. O. Box 307**
**Jonesboro, LA 71251-0307**
**(318) 259-2391**
**Counsel for Defendant/Appellant:**
**Joseph Thomas Savoie**

**Michael Harson**
**District Attorney, Fifteenth  Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Appellee:**
**State of Louisiana**

**Joseph Thomas Savoie**
**a/k/a Joseph Thomas Savoy**
**Camp - C - Tiger I/L #5**
**Angola, Louisiana 70712**

**EZELL, JUDGE.**

On January 26, 2005, the Defendant, Joseph Thomas Savoie, a/k/a Joseph Tommy Savoie, a/k/a Joseph Thomas Savoy, was indicted with aggravated rape, a violation of La.R.S. 14:42. Following a bench trial, the Defendant was found guilty of attempted aggravated rape on October 10, 2006. He was sentenced on December 18, 2006, to serve twenty years at hard labor, with credit for time served, to run consecutively to any sentence he was serving at that time. A motion to reconsider the Defendant's sentence was not filed.

On March 12, 2007, the Defendant filed a *pro se* motion for an out-of-time appeal which was subsequently granted. The Defendant is now before this court on appeal, asserting that his conviction should be overturned based on one assignment of error filed by appellate counsel and two *pro se* assignments of error.

## FACTS

On the morning of October 7, 1994, an employee of Borden Milk Company was making deliveries on the route where the elderly victim, seventy-six years old, lived. He knocked on the victim's door and entered the home to find the victim with her hands tied behind her back and laying of the floor, her blouse removed. The delivery man called 911, and the police arrived shortly thereafter. The victim reported to the responding officers that she heard a knock on the door and allowed the Defendant to enter her home, believing he was a census taker. Once the Defendant was inside, he forced her to perform oral sex and vaginally raped her. A rape kit was obtained from the victim, and her blouse, which was found next to where she was laying on the floor, was recovered.

The crime remained unsolved but was assigned for follow-up, almost ten years later, in September of 2004. At that time, detectives learned that the victim had

1

passed away. However, the victim's blouse that had been recovered at the scene was processed, and a semen fluid stain was found on the blouse. A DNA profile was generated from the semen stain which was placed into the Combined DNA Index System (CODIS) where a preliminary match to the Defendant was made. A search warrant to draw blood and other samples from the Defendant was obtained, and the samples were delivered to the Acadiana Criminalistics Laboratory (Acadiana Crime Lab). A DNA profile generated from the Defendant's blood sample was compared to the DNA profile from the semen stain on the victim's blouse, and the two DNA profiles matched. The Defendant was subsequently indicted with aggravated rape.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent. However, we note one issue worth discussing.

Court minutes from a pretrial hearing held October 9, 2006, indicate defense counsel was present, but the Defendant presented arguments on his motion to quash, suggesting that he may have represented himself for at least a portion of the proceeding. We reviewed the transcript to first determine whether the Defendant had the right to counsel at this proceeding. Because the Defendant did not have the right to counsel at this hearing, it is unnecessary to further consider whether the Defendant was in fact represented, and if not, whether he waived the right to representation.

In *State v. Haider*, 00-231, pp. 3-6 (La.App. 3 Cir. 10/11/00), 772 So.2d 189, 191-93, this court, in its error patent discussion, addressed the defendant's lack of representation at the hearing to determine his capacity to proceed to trial. In doing so, this court discussed the right to counsel and at which proceedings it exists:

> Article 514 of the Code of Criminal Procedure requires the minutes of court to "show either that the defendant was represented by

2

counsel or that he was informed by the court of the defendants' right to counsel, including the right to appointed counsel, and that he waived such right." In *State v. Carter*, 94-2859 (La.11/27/95); 664 So.2d 367, 372-373, the Louisiana Supreme Court stated the following regarding a defendant's right to counsel:

> As correctly noted in *Hattaway*, the Sixth Amendment right to counsel attaches only after the commencement of adverse judicial criminal proceedings. In the plurality opinion of *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the Supreme Court held the right to counsel does not attach prior to the "initiation of adversary judicial criminal proceedings– whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

> * * *

> Even though the Sixth Amendment right to counsel may have attached, however, it does not exist to protect the defendant at all post-attachment proceedings. The right exists only during those post-attachment, pre-trial confrontations which can be considered "critical stages." In *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967), the Court described a critical stage as a "critical pretrial confrontation[ ] where the results might well settle the accused's fate and reduce the trial to a mere formality." See also *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) (A "critical stage" is a pretrial proceeding where "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.") (quoting *United States v. Ash*, 413 U.S. 300, 310, 93 S.Ct. 2568, 2574, 37 L.Ed.2d 619 (1973)).

> . . . .

In *Carter*, the supreme court summarized the necessary analysis in determining whether a proceeding is a critical stage. It stated:

> This determination involves an analysis of 'whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice' and includes 'any pretrial procedure occurring after the attachment of the right to counsel in which a meaningful defense or a fair trial could potentially be impaired if an uncounselled defendant were subjected to a confrontation by the state.' *Hattaway*, 621 So.2d at 802 and 809.

3

*Carter*, 664 So.2d at 371.

Under this analysis, we find the hearing to determine the Defendant's competency was a critical stage in the proceedings against him. Because the Defendant's competency is in question, his ability to represent himself is also highly questionable. It is difficult to fathom someone with the Defendant's mental problems attempting to intelligently question experts and present cogent evidence at a critical hearing involving competency. Thus, the presence of counsel is essential to ensure the experts presented are confronted as to their findings regarding the Defendant's competency. Without such, the potential exists for an incompetent defendant to be erroneously found competent and forced to withstand trial without being able to assist in his defense.

We have not found any cases discussing whether the hearing to determine the Defendant's sanity is a critical stage of the proceedings. However, two United States Supreme Court cases assist in making this determination. In *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the Supreme Court addressed the issue of whether Alabama's preliminary hearing was a critical stage, invoking the defendant's right to counsel. The Court stated the following regarding the types of proceedings found to be critical stages:

> The determination whether the hearing is a "critical stage" requiring the provision of counsel depends, as noted, upon an analysis "whether potential substantial prejudice to defendant's rights inheres in the * * * confrontation and the ability of counsel to help avoid that prejudice."

*Id*. at 2003.

The Court further stated: "Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution." *Id*. at 2003. The court then went on to discuss several ways in which counsel could protect a defendant's rights at a preliminary examination.

Subsequently, in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court addressed the issue of whether Florida's probable cause hearing was a critical stage in the proceedings. The Court found that "[b]ecause of its limited function and its nonadversary character, the probable cause determination is not a 'critical stage' in the prosecution that would require appointed counsel." *Gerstein*, 95 S.Ct. at 867. The Court distinguished its prior decision in *Coleman*. The Court noted that a finding of no probable cause at the Alabama preliminary examination could mean the defendant would not be tried at all. On the other hand, Florida's Fourth Amendment probable cause determination affects the defendant's pretrial custody only. Secondly,

4

the Gerstein court noted, "Alabama allowed the suspect to confront and cross-examine prosecution witnesses at the preliminary hearing." *Id*. at 868. Thus, as noted by the Court in Coleman, the "suspect's defense on the merits could be compromised if he had no legal assistance for exploring or preserving the witnesses' testimony." *Id*.

Some examples of proceedings which this court has found are critical stages are hearings to determine competency (*Haider*) and sentencing (*State v. Dupas*, 94-1264 (La.App. 3 Cir. 3/6/96), 670 So.2d 667). This court has held arraignment was not a critical stage of the proceedings (*State v. Tarver*, 02-973, 02-974, 02-975 (La.App. 3 Cir. 3/12/03), 846 So.2d 851, *writ denied*, 03-1157 (La. 11/14/03), 858 So.2d 416) and that a defendant is not constitutionally entitled to have counsel present at the gathering of print exemplars. (*State v. Jones*, 467 So.2d 147 (La.App. 3 Cir. 1985)).

In *State v. Roberts*, 569 So.2d 671, 674 (La.App. 2 Cir. 1990), the second circuit stated, "The pretrial hearing on a motion to suppress or to quash is a critical stage of the proceedings at which the right to counsel of one's choice attaches."

In this case, the Defendant filed two pro se motions to quash which were taken up at the October 9, 2006 hearing. The Defendant additionally filed a written request to represent himself on these motions. Although *Roberts* held that hearings on motions to quash are critical stages at which the right to counsel exists, we find in this case, the hearing on the pro se motions to quash was not a critical stage. Although titled motions to quash, the grounds of the motions concerned the alleged violations of the Defendant's right to have counsel appointed within seventy-two hours of arrest, the failure to timely file a bill of information within sixty days of arrest, and finally, the failure to arraign him within thirty days of the filing of the bill. *See* La.Code Crim.P. arts. 230.1 and 701. These claims do not concern the time limitation for the institution of prosecution or for the commencement of trial, which are valid grounds

5

for a motion to quash. *See* La.Code Crim.P. art. 532(7) and *State v. Barnes*, 94-1411 (La.App. 4 Cir. 12/28/94), 648 So.2d 480. In *State v. Francois*, an unpublished writ bearing docket number 03-1324 (La.App. 3 Cir. 11/10/03), this court held that an Article 701(B) hearing is not a critical stage of the proceeding, and the right to counsel does not apply.[1] We find the same would be true for hearings concerning alleged violations of La.Code Crim.P. art. 230.1, which, like Article 701 hearings, concern pretrial custody only, not dismissal of the charge. A hearing on an alleged violation of either article in no way potentially impairs a meaningful defense or a fair trial. Accordingly, we find the October 9, 2006 hearing was not a critical stage of the proceedings in this case. Thus, no error patent is recognized.

### ASSIGNMENT OF ERROR

In this assignment of error, the Defendant argues that La.R.S. 15:499 does not provide chain of custody protection for an analysis done at a private laboratory outside the State of Louisiana. We note, however, that defense counsel did not object to the Acadiana Crime Lab reports when they were offered and introduced into evidence at trial. Louisiana Code of Criminal Procedure Article 841 (A) provides, in pertinent part, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

In *State v. Cunningham*, 04-2200 (La. 6/13/05), 903 So.2d 1110, the supreme court considered the constitutionality of La.R.S. 15:499-501 with regard to the admissibility of a certificate of analysis of laboratory results as *prima facie* proof of

---

[1] The pertinent portion of the ruling states:

> Because a La.Code Crim.P. art. 701(B)(1) hearing is limited to the determination of when the indictment or bill of information was filed, it neither questions the defendant's guilt or innocence nor contributes to the determination thereof. Thus, a La.Code Crim.P. art. 701(B)(1) hearing is not a critical stage of the proceedings and right to counsel does not apply.

6

the substance tested without live testimony of the person performing the analysis. After determining that the statutes are not unconstitutional, the court added that the statutes, from a practical standpoint, are no different from hearsay evidence offered at trial. "If defendant does not contemporaneously object, the hearsay is allowed into evidence." *Id*. at 1121.

In the instant case, the Defendant did not object at trial to the admission of the Acadiana Crime Lab reports containing the certificates of analysis of laboratory results and thus failed to preserve his right to challenge the evidence post-verdict. Accordingly, this error is without merit.

**PRO SE ASSIGNMENTS OF ERROR NUMBER ONE AND TWO**

By these assignments of error, the Defendant argues that he was not booked or brought before a judge for the purpose of appointment of counsel within seventy-two hours of his arrest while incarcerated and that the State failed to file a bill of information or indictment within sixty days of his arrest while incarcerated. As a result of same, the Defendant maintains that his conviction and sentence should be vacated.

The court notes the Defendant did not raise this issue at any time prior to this appeal. It is well settled that the statutory speedy trial claim provision of La.Code Crim.P. art 701 is a pretrial claim that is rendered moot upon conviction. "Once a defendant has been tried and convicted, his allegation that article 701 has been violated becomes moot." *State v. Mack*, 37,174, 37,175, p.19 (La.App. 2 Cir. 6/27/03), 850 So.2d 1035,1047, *writ denied*, 03-2122 (La. 1/16/04), 864 So.2d 628.

Likewise, the remedy for a violation of La.Code Crim.P. art. 230.1 is pretrial release of a defendant, not requiring the reversal of a conviction. Thus, pursuant to Article 230.1(D), "The failure of the sheriff or law enforcement officer to comply

7

with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant." *State v. Manning*, 03-1982 (La. 10/19/04), 885 So.2d 1044, *cert. denied*, 544 U.S. 967, 125 S.Ct. 1745 (2005). Accordingly, these claims are without merit.

## CONCLUSION

The Defendant's conviction is affirmed.

**AFFIRMED.**