**STATE OF LOUISIANA IN THE INTEREST OF S.F.**

    \*

    \*

    \*

    \*

**NO. 2024-CA-0383**

**COURT OF APPEAL**

**FOURTH CIRCUIT**

**STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2022-341-07-DQ-A, SECTION "A"
Honorable Clinton Smith, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)

Jason R. Williams, District Attorney
Brad Scott, Assistant District Attorney
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR APPELLANT, State of Louisiana

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

      COUNSEL FOR APPELLEE, S.F.

               **REVERSED AND REMANDED**
                  **OCTOBER 7, 2024**

DNA

TFL

RLB

In this juvenile delinquency proceeding, Appellant, the State of Louisiana ("State"), appeals the juvenile court's May 29, 2024 judgment, which dismissed the State's delinquency petition filed against Appellee, S.F.,[1] after finding that the State failed to timely commence an adjudication hearing against S.F. After consideration of the record before this Court and the applicable law, we reverse the juvenile court's judgment and remand with instructions.

## STATEMENT OF THE CASE

The State filed a delinquency petition on April 25, 2023, which charged S.F. with sexual battery in violation of La. R.S. 14:43.1. The facts of the underlying offense are not pertinent to the issues presented on appeal. Instead, the relevant facts and procedural history beginning with S.F. being taken into custody are established in the following timeline:

> **December 4, 2022:** S.F. was taken into custody for a sexual battery that allegedly occurred between October 1, 2022, and December 4, 2022.

---

[1] Pursuant to the requirements of confidentiality in juvenile proceedings as set forth in La. Ch. C. art. 412, as well as in Rules 5-1 and 5-2 of the Uniform Rules of the Courts of Appeal, we will refer to the juvenile by his initials only, S.F. *See also State in Interest of K.B.*, 2023-0409, p. 1 (La. App. 4 Cir. 09/26/23), 372 So.3d 864, 868 n.1.

1

**December 7, 2022:** S.F. appeared with his grandmother and his aunt at a continued custody hearing, at which he stipulated to probable cause. The juvenile court signed a Juvenile Release Order, which released S.F. into the custody of his grandmother and provided S.F.'s grandmother with temporary custody until the next hearing.

**December 8, 2022:** The juvenile court signed a "CONTINUED CUSTODY/RELEASE JUDGMENT" ("Release Judgment"), which listed S.F.'s grandmother's address as a property on Belfast Street in New Orleans.[2] The Release Judgment contained both general and special conditions. In pertinent part, one of the general conditions stated that "[t]he juvenile must abide and inform the court concerning all important changes in their personal status, including address and phone number changes. Failure to do so[] may result in being held in contempt of court." The Release Judgment also ordered S.F. to stay away from the alleged victim and the house where the alleged incident occurred.

**April 25, 2023:** The State filed a delinquency petition, which charged S.F. with one count of sexual battery. The delinquency petition listed a property on Rocheblave Street as the address for S.F.'s mother and grandmother, and the petition listed that same Rocheblave Street address as the location of the alleged sexual battery.[3] Additionally, the petition listed S.F.'s grandmother as his guardian.

**April 26, 2023; April 28, 2023; and May 1, 2023:** Service was attempted on S.F. through his mother at the Rocheblave Street address in anticipation of a May 2, 2023 answer hearing, but all three of these service attempts failed.

**May 2, 2023:** Neither S.F., his mother, nor his grandmother appeared at the answer hearing. The juvenile court reset the answer hearing for June 2, 2023.

**June 2, 2023:** Again, S.F., his mother, and his grandmother did not appear for the answer hearing. According to the State in its brief to this Court, the Clerk of Court for the juvenile court failed to issue subpoenas for this answer hearing, such that no service attempts were made on S.F., his mother, and his grandmother. The juvenile court reset the answer hearing to December 11, 2023.

---

[2] Though the exact address on Belfast Street appears in the record before this Court, we will not repeat it herein so as to maintain confidentiality in this juvenile proceeding.

[3] Again, though the exact address on Rocheblave Street appears in the record before this Court, we will not repeat it herein so as to maintain confidentiality in this juvenile proceeding.

**December 11, 2023:** As with the prior answer hearings, S.F., his mother, and his grandmother were not present. The State contends in its brief to this Court that the Clerk of Court for the juvenile court did not issue a subpoena for this answer hearing, so no service attempts were made on S.F., his mother, and his grandmother. The juvenile court reset the answer hearing to January 11, 2024.

**December 14, 2023; December 15, 2023; and January 11, 2024:** Service was attempted on S.F. for the January 11, 2024 answer hearing but failed.

**January 11, 2024:** S.F., his mother, and his grandmother failed to appear at the answer hearing. The juvenile court reset the answer hearing to February 7, 2024.

**January 24, 2024; January 30, 2024; and January 31, 2024:** Service was attempted on S.F.'s mother at an address on Longfellow Drive in New Orleans for the February 7, 2024 hearing but failed.[4]

**February 7, 2024:** S.F., his mother, and his grandmother did not appear at the answer hearing. S.F.'s counsel informed the juvenile court that she "attempted to call and text the youth/parent but was unable to make contact." The juvenile court instructed the State to obtain a good address for S.F. and to attempt service again. The juvenile court reset the answer hearing for March 18, 2024.

**February 28, 2024; February 29, 2024; and March 1, 2024:** Ahead of the March 18, 2024 hearing, service attempts were made on these dates at the Longfellow Drive address without success.

**March 18, 2024:** S.F., his mother, and his grandmother did not appear at the answer hearing. The juvenile court noted that if the State could not provide a good address for S.F. for service by the next answer hearing, it might entertain a motion to dismiss from counsel for S.F. The trial court reset the answer hearing for April 4, 2024.

**April 4, 2024:** S.F., his mother, and his grandmother did not appear for the answer hearing. According to the State in its brief to this Court, the Clerk of Court failed to issue subpoenas for this answer hearing, such that no service attempts were made on S.F., his mother, and his grandmother. The juvenile court reset the answer hearing to April 25, 2024.

---

[4] As with the previous addresses, though the exact address on Longfellow Drive appears in the record before this Court, we will not repeat it herein so as to maintain confidentiality in this juvenile proceeding.

**April 8, 2024; April 11, 2024; April 12, 2024:** Ahead of the April 25, 2024 hearing date, service was again attempted on S.F. and his mother at the Longfellow Drive address on these dates but without success.

**April 25, 2024:** S.F., his mother, and his grandmother did not appear at the answer hearing; and the State informed the juvenile court that it would attempt to locate the school that S.F. was attending and make service. Counsel for S.F. filed a "Motion to Dismiss Petition For Failure To Timely Institute Proceedings" ("Motion to Dismiss"). The juvenile court reset the answer hearing for May 6, 2024.

**April 29, 2024:** The State filed a subpoena duces tecum directing the school that S.F. supposedly attended to provide the State with S.F.'s address.[5] The juvenile court signed the order the following day and set the return date as May 6, 2024.

**May 8, 2024:** The State attempted and failed to make service on S.F. and his mother on the morning of the reset answer hearing at an address on Chef Menteur Highway in New Orleans.[6] S.F., his mother, and his grandmother did not appear. The State requested that the juvenile court grant a final continuance in order for the State to obtain a return of the subpoena duces tecum on S.F.'s school and to attempt to make service one last time. The juvenile court granted the State's request for a continuance and set the Motion to Dismiss hearing for May 29, 2024.

**May 24, 2024, and May 28, 2024:** Lionel Haynes ("Investigator Haynes"), an investigator with the Orleans Parish District Attorney's Office, attempted and failed to make service on S.F. at the Chef Menteur Highway address.

The May 24 and 28, 2024 service attempts marked the last. Thereafter, on May 29, 2024, the juvenile court conducted a hearing on the Motion to Dismiss filed by S.F.'s counsel. As with the prior hearings, S.F., his mother, and his grandmother were not present. Investigator Haynes testified at the hearing that he attempted service at the Chef Menteur Highway address, which had been provided

---

[5] Though the name of the school appears in the record before this Court, we will not repeat it herein so as to maintain confidentiality in this juvenile proceeding.

[6] This exact address appears in the record too, but we have not repeated it herein so as to maintain confidentiality in this juvenile proceeding.

by S.F.'s school. The juvenile court stated that after resetting the answer hearing numerous times and numerous failed service attempts on the part of the State, it could no longer find good cause to delay the answer hearing and orally dismissed the delinquency petition. That same day, the juvenile court issued a judgment, which stated, in pertinent part:

> After a review of the record, a review of the motion filed by defense counsel and the taking of testimony, the Court now GRANTS [the] defense motion to dismiss due to failure to timely prosecute, noting the [S]tate's objection.
>
> IT IS ORDERED, ADJUDGED AND DECREED this matter is now DISMISSED.

The State's timely appeal followed.

## ASSIGNMENTS OF ERROR

In its brief to this court, the State asserts two assignments of error. Specifically, the State contends:

1. The [juvenile court] had no authority to dismiss the case prior to an [a]nswer hearing and proper service on [S.F.].

2. The [juvenile court] erred in failing to consider good cause when [S.F.]'s failure to notify the court or his attorney of a change of address satisfies the good cause requirement that overcomes any delay associated with not being able to properly serve [him].

Prior to addressing the merits, we begin with the applicable standard of review.

## STANDARD OF REVIEW

As this Court has previously held, a "juvenile court is vested with broad discretion in determining whether a case should be dismissed for good cause." *State in Interest of R.W.*, 2016-1187, p. 6 (La. App. 4 Cir. 03/02/17), 213 So.3d 13, 17 (citing *State ex Rel. R.G.*, 2006-1625, p. 3 (La. App. 4 Cir. 7/18/07), 963 So.2d 475, 477). Accordingly, this Court applies the abuse of discretion standard of

5

review in determining whether a juvenile court has erred in dismissing a juvenile delinquency petition based on the State's failure to timely commence an adjudication hearing. *Id.* at p. 8, 213 So.3d at 18. *See also State ex Rel. R.G.*, 2006-1625, p. 3, 963 So.2d at 477. However, this Court has also held that "[a] *de novo* review is necessary when [the juvenile] court misapplies the law and the only issue is a question or finding of law." *State in Interest of G.S.*, 2019-0605, p. 5 (La. App. 4 Cir. 12/4/19), 287 So.3d 752, 756 (citing *State in Interest of K.C.C.*, 2015-1429, p. 4 (La. 1/27/16), 188 So.3d 144, 146).

## DISCUSSION

### Assignment of Error Number One: Whether the Juvenile Court Had Authority to Dismiss the Case Prior to an Answer Hearing and Proper Service on S.F.

In its first assignment of error, the State contends "[t]he [juvenile] court had no authority to dismiss the delinquency petition against S.F. prior to an [a]nswer hearing and proper service on [S.F.]." In support of its contention, the State argues the time to commence the adjudication hearing under La. Ch.C. art. 877(B) had not begun to run because S.F. had never made an appearance to answer the delinquency petition since S.F. was never served after S.F. and his caregiver moved without notifying the juvenile court, the State, or his attorney. Counsel for S.F. counters that "although the State focuses on the petition being dismissed prior to the answer hearing as determinative of whether the juvenile court abused its discretion in dismissing the charges, the focus should be whether the child or legal guardian was ever advised that a date for the answer hearing had been set or even if the charges had been accepted." Resolution of this assignment of error requires us to answer two questions. First, did the time to commence the adjudication proceeding under La. Ch.C. art. 877(B) ever begin to run because S.F. never

6

appeared to answer the petition? If not, did the juvenile court nonetheless have authority to dismiss the delinquency petition because the answer hearing did not occur within the statutory time limitations found in La. Ch.C. art. 854?

***Did the time to commence the adjudication proceeding ever begin to run?***

In its brief to this court, the State argues the time period to hold the adjudication hearing under La. Ch.C. art. 877 does not begin to run until the juvenile has appeared to answer the delinquency petition. We agree. Louisiana Children's Code Article 877 establishes the time limitations for commencement of an adjudication hearing in a juvenile case. It states in pertinent part:

> B. If the child is not continued in custody, the adjudication hearing shall commence *within ninety days of the appearance to answer the petition*.

> C. If the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and shall dismiss the petition.

(Emphasis added). In discussing La. Ch.C. art. 877, this Court has held that the time period to commence the adjudication hearing does not begin until the juvenile appears to answer the delinquency petition. *State in Interest of G.S.*, 2019-0605, p. 6, 287 So.3d at 757. That is, in a similar case procedurally-speaking, *State in Interest of G.S.*, the juvenile never appeared to answer the delinquency petition filed against him; and his counsel moved to dismiss the delinquency petition against him. *Id.* at pp. 2-7, 287 So.3d at 755-57. This Court specifically held that "the time in which to commence the statutory time for [the juvenile]'s adjudication hearing - ninety days from an appearance - never commenced to run because [the juvenile] never appeared to answer the petition. The triggering of the ninety days is 'the appearance to answer the petition.'" *Id.* at p. 7, 287 So.3d at 757. Accordingly, this Court concluded that the juvenile court erred by dismissing the delinquency

7

petition against G.S. *Id.* As in *State in Interest of G.S.*, in the matter *sub judice,* S.F. has never appeared to answer the delinquency petition. Thus, under the plain language of La. Ch.C. art. 877(B) and in line with this Court's prior holding in *State in Interest of G.S.*, we find that the time limit established by La. Ch.C. art. 877(B) never commenced because S.F. has not yet appeared to answer the petition. The juvenile court legally erred by misapplying La. Ch.C. art. 877. Despite this misapplication of La. Ch.C. art. 877, we consider whether the trial court nevertheless had authority to dismiss the petition on another ground.

***Did the juvenile court nonetheless have authority to dismiss the delinquency petition because the answer hearing did not occur within the statutory limits?***

As stated previously, to resolve the State's first assignment of error we also consider whether the juvenile court nonetheless had authority to dismiss the delinquency petition filed against S.F. because the answer hearing did not occur within the time limit set by La. Ch.C. art. 854. Louisiana Children's Code Article 854 is entitled "Appearance to Answer Petition; Time." It states:

> A. If the petition is filed prior to or during the hearing to determine continued custody, the court may order the child to answer the petition upon completion of the hearing. If not so ordered and the child is continued in custody, he shall be ordered to appear to answer the petition within five days after the filing of the petition.
>
> B. In all other cases, the child shall be ordered to appear to answer the petition within fifteen days after the filing of the petition.
>
> C. For good cause, the court may extend such period.

Because the juvenile court did not continue S.F. in continued custody during the pendency of these proceedings (instead the juvenile court released him to his grandmother at the December 7, 2022 continued custody hearing), La. Ch.C. art.

854(B) required the answer hearing to occur within fifteen days of the filing of the delinquency petition, i.e., within fifteen days of April 25, 2023.

However, La. Ch.C. art. 854 does not contain a provision setting forth a remedy for an untimely answer hearing. To this end, La. Ch.C. art. 104(1) states that "[w]here procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with . . . [t]he Code of Criminal Procedure in a delinquency proceeding and in a criminal trial of an adult." Additionally, La. Ch.C. art. 803, which is in the section of the Louisiana Children's Code labeled "Title VIII. Delinquency," provides that "[t]he provisions of this [T]itle shall govern and regulate delinquency proceedings of courts exercising juvenile jurisdiction." If "procedures are not provided in [that] Title, or otherwise by [the Louisiana Children's] Code" though, "the court shall proceed in accordance with the Code of Criminal Procedure." La. Ch.C. art. 803. *See also State in Interest of K.B.*, 2023-0409, pp. 16-17, 372 So.3d at 877 (citing *State in Interest of C.H.*, 2021-0516, p. 17 (La. App. 4 Cir. 1/26/22), 335 So.3d 451, 462). Thus, Louisiana courts apply the Children's Code when possible and the Louisiana Code of Criminal Procedure in the absence of an applicable Children's Code provision.

This is what the Louisiana Third Circuit Court of Appeal ("Third Circuit") did after likewise noting the absence of a remedy in La. Ch.C. art. 854 regarding an untimely answer hearing in *State in Interest of L.D.*, 2014-01, p. 9 (La. App. 3 Cir. 5/7/14), 139 So.3d 679, 685. In that case, the Third Circuit considered the juvenile's argument "that the remedy for [his] untimely answer hearing under La. Ch.[C] art. 854 should be the same as the remedy for an untimely adjudication under La. Ch.C[.] art. 877, i.e., dismissal of the delinquency petition [filed against him]." *Id.* at p. 8, 139 So.3d at 684. The Third Circuit held that La. C.Cr.P. art. 701

is the Code of Criminal Procedure provision that is analogous to the answer hearing requirement of La. Ch.C. art. 854. *Id.* at p. 9, 139 So.3d at 685. Louisiana Code of Criminal Procedure Article 701 is titled "Right to a speedy trial," and it provides, in pertinent part:

B. The time period for filing a bill of information or indictment after arrest shall be as follows:

(1)(a) When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed within thirty days of the arrest if the defendant is being held for a misdemeanor and within sixty days of the arrest if the defendant is being held for a felony.

(b) When the defendant is continued in custody subsequent to an arrest, an indictment shall be filed within one hundred twenty days of the arrest if the defendant is being held for a felony for which the punishment may be death or life imprisonment.

(2)(a) When the defendant is not continued in custody subsequent to arrest, an indictment or information shall be filed within ninety days of the arrest if the defendant is booked with a misdemeanor and one hundred fifty days of the arrest if the defendant is booked with a felony.

(b) Failure to institute prosecution as provided in Subparagraph (1) of this Paragraph shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. If just cause is shown, the court shall reconsider bail for the defendant. Failure to institute prosecution as provided in this Subparagraph shall result in the release of the bail obligation if, after contradictory hearing with the district attorney, just cause for the delay is not shown.

As the Third Circuit explained in interpreting this Article, whether the defendant is continued in custody or not, "violations of La. [C.Cr.]P. art 701 'concern pretrial custody only, not dismissal of the charge.'" *State in Interest of L.D.*, 2014-01, p. 10, 139 So.3d at 685 (quoting *State v. Savoie*, 2007-914, p. 6 (La. App. 3 Cir. 3/5/08), 982 So.2d 119, 123). Thus, extending this statutory interpretation to La. Ch. art. 854, the Third Circuit disagreed with L.D.'s argument that he was

entitled to dismissal of the charge, instead holding "that the remedy for an untimely answer hearing under La. Ch.C[.] art. 854 is to release the juvenile from custody rather than dismissal of the charges."[7] *Id.* The Louisiana Supreme Court affirmed the Third Circuit's decision that an untimely answer hearing does not result in dismissal of the charges, holding that "[o]nly when the time afforded by La.Ch.C. art. 877 to commence the delinquency adjudication following the answer hearing is exceeded must the court dismiss the petition at the request of the juvenile." *State in Interest of L.D.*, 2014-1080, p. 5 (La. 10/15/14), 149 So.3d 763, 766.

In the matter *sub judice,* an answer hearing has yet to be held. If and when an answer hearing is ultimately held in this matter, it will, of course, be untimely because the statutory time limit has already passed. The only remedy to which S.F. would be entitled due to this untimeliness is release from custody; however, as we have previously explained, the juvenile court released S.F. to the custody of his grandmother at the continued custody hearing. The result is that there is no remedy for S.F. for the untimely answer hearing, and this issue is moot. Accordingly, the juvenile court had no authority to dismiss the petition filed against S.F. for the lack of a timely answer hearing.

Because the juvenile court erred by misapplying the time limit in La. Ch.C. art. 877 and had no authority under La. Ch.C. art. 854 (or otherwise) to dismiss the

---

[7] We note a distinction between the matter *sub judice* and *State in Interest of L.D.* In *State in Interest of L.D.*, by the time the matter reached the Third Circuit, an answer hearing occurred, and L.D. had already been adjudicated. 2014-01, pp. 1-2, 139 So.3d at 680. After holding that the remedy for an untimely answer hearing was a release from custody rather than dismissal of the charges, Third Circuit further explained that the violation of La. Ch.C. art. 854 in L.D.'s case had been rendered moot anyway because he had already been adjudicated. *Id.* at p. 11, 139 So.3d at 685.

delinquency petition, we reverse the juvenile court's May 29, 2024 judgment, which granted S.F.'s Motion to Dismiss, and we remand this matter for further proceedings consistent with this Court's Opinion. In so ruling, we are also mindful of and take this opportunity to point to the following pertinent passage from this Court's Opinion in *State in Interest of G.S.*:

> Moreover, the statutory timing mechanisms found in the Children's Code are designed such that when the question of a child's whereabouts is raised (which inherently includes questions of a child's safety and well-being), no further steps in a delinquency case can take place, except for proceedings necessary to immediately locate the child and/or parent(s) or guardian(s) to determine the child's welfare. Particularly, in the case *sub judice*, proper procedural steps need to be taken to determine why [G.S.] has not appeared to answer the petition and why [G.S.] may have been removed from the jurisdiction after his arrest as the record reveals. A dismissal of the delinquency petition against [G.S.] is improper at this time and contrary to the Children's Code's statutory scheme which is designed to ensure a child's wellbeing and contrary to jurisprudence that recognizes the importance of a court's application of the juvenile laws utilizing an analysis that focuses on the welfare of the child.
>
> . . . .
>
> A "juvenile court is vested with broad discretion to arrive at solutions balancing the needs of the child with interests of society." *State ex rel. S.R.*, [20]08-785, pp. 4-5 (La. App. 4 Cir. 10/8/08), 995 So.2d 63, 66 (citing *State in Interest of R.W. and N.W.*, [19]97-0268 (La. App. 4 Cir. 4/16/97), 693 So.2d 257). One goal of the Children's Code is to avoid a ruling which "[the juvenile judge] knows is only a dead end for the child." *State ex rel. D.R.*, [20]10-0406, p. 5 (La. App. 4 Cir. 10/20/10), 51 So. 3d 121, 124 (quoting McGough & Triche, *Louisiana Children's Code Handbook* 2009-2010 (West), pp. 479-80 (quoting Polier, *A View from the Bench* 30 (1964))). Additionally, the paramount obligation of attorneys for [G.S.] and the State at this time in [G.S.'] juvenile case is to ensure the welfare of [G.S.] by determining his whereabouts. . . . At this time in the juvenile court proceedings, the best interest of [G.S.] and society do not conflict in that both interests require the immediate location of the whereabouts of [G.S.]. Moreover, the burden in discovering the whereabouts of [G.S.] rests equally on the attorneys in the case as well as the juvenile court judge.

2019-0605, pp. 10-14, 287 So.3d at 760-62 (footnotes omitted). As the above passage encapsulates, the duty of locating S.F. rests not only with the State but also counsel for S.F. and the juvenile court. That is, the State, counsel for S.F., and the juvenile court all have a duty to establish S.F.'s whereabouts for his benefit to ensure his safety and well-being. As in *State in Interest of G.S.*, this Court finds that proper procedural steps need to be taken to determine why S.F. has not appeared to answer the petition, why he may have been removed from the jurisdiction, and why he has not reported his apparent change(s) of address. Therefore, we remand this matter for further proceedings in the juvenile court consistent with this Opinion. That is, not only do we reverse the dismissal of the delinquency petition, but we also instruct the juvenile court, the State, and counsel for S.F. to continue their efforts to locate S.F.

### Assignment of Error Number Two: Whether the Juvenile Court Erred in Failing to Consider Good Cause in Light of S.F.'s Failure to Provide Notification Regarding his Change of Address

In its second assignment of error, the State contends that the juvenile court erred when it found that the State failed to show good cause to delay the answer hearing "based on the fact that the juvenile changed schools and addresses without notification, that his whereabouts are unknown even to his attorney, and that the State made independent attempts at service through a[n] . . . investigator." Having already concluded that the juvenile court erred in granting S.F.'s Motion to Dismiss, we need not consider whether the juvenile court erred in finding that the State failed to show good cause to delay the answer hearing. Therefore, we pretermit discussion of the State's second assignment of error.

13

**DECREE**

For the foregoing reasons, we reverse the juvenile court's May 29, 2024 judgment, which granted S.F.'s Motion to Dismiss. We also remand this matter for further proceedings consistent with this Opinion.

**REVERSED AND REMANDED**