772 So.2d 189 (2000)
STATE of Louisiana
v.
Thomas William HAIDER.
No. CR00-231.
Court of Appeal of Louisiana, Third Circuit.
October 11, 2000.
*190 Martin E. Regan, Jr., Regan & Associates, PLC, New Orleans, LA, Counsel for Defendant/Appellant, Thomas William Haider.
Michael Harson, District Attorney, Keith Stutes, Assistant District Attorney, District Attorney's Office, Courthouse Building, Lafayette, LA, Counsel for Plaintiff/Appellee, State of Louisiana.
Court composed of Judge ULYSSES GENE THIBODEAUX, Judge JOHN D. SAUNDERS and Judge MARC T. AMY.
THIBODEAUX, Judge.
On August 18, 1993, the Defendant, Thomas Haider, was indicted for the first degree murder of his landlord, Presley Benoit. On August 23, 1993, the Defendant entered a plea of not guilty and not guilty by reason of insanity. Two months later, on October 20, 1993, the Defendant filed a motion for the appointment of a sanity commission to determine his mental capacity to proceed. The court appointed the commission on October 21, 1993. At a hearing held September 30, 1994, the Defendant was found incapable of proceeding. Subsequently, on March 27, 1996, the trial court, having been informed by the Feliciana Forensic Facility that the Defendant would not be capable of proceeding in the near future, ordered a sanity commission to determine whether the Defendant was presently or would be in the foreseeable future, capable of proceeding to trial. The order was revised on April 11, 1996 because the Defendant was physically ill and could not be transported to the Fifteenth Judicial District for evaluation. The trial court then appointed two other doctors to examine the Defendant and determine whether he was capable of proceeding to trial. A hearing was held on May 6, 1996, at which the State informed the trial court that the doctors then serving on the sanity commission recommended that a cardiologist also be appointed to the commission. Pursuant to the recommendation, the trial court referred the Defendant to a cardiologist with the Feliciana Forensic Facility. Subsequently, on December 13, 1996, the trial court, having been informed by the Superintendent of the Feliciana Forensic Facility that the Defendant was capable of proceeding to trial, ordered a sanity commission appointed to determine whether the Defendant was capable of proceeding. Then, on February 28, 1997, the trial judge ordered a sanity commission consisting of *191 one psychiatrist, one psychologist and one cardiologist to examine the Defendant and make a recommendation as to whether the Defendant had the capacity to proceed.
Finally, on April 25, 1997, the Defendant appeared before the court for a hearing to determine his capacity to proceed. Although the Defendant's counsel did not appear for the proceeding and the Defendant was not asked if he wished to waive counsel, the court allowed the Defendant to proceed unrepresented. After a hearing, the trial court found the Defendant competent to proceed.
The State amended the indictment to charge the Defendant with second degree murder instead of first degree murder. The Defendant was arraigned on the amended charge of second degree murder, and entered a plea of not guilty and not guilty by reason of insanity. The Defendant waived his right to a jury trial and proceeded with a bench trial. The trial judge found the Defendant guilty as charged of second degree murder. Having waived the delays for sentencing, the Defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The Defendant now appeals his conviction, alleging four assignments of error. The primary assignment is whether the trial court erroneously rejected a verdict of not guilty and not guilty by reason of insanity when the Defendant proved that it was more likely than not that he was insane at the time he committed the homicide. However, because we find that the Defendant was unrepresented by counsel at a hearing to determine his capacity to proceeda critical stage of the proceedingswe reverse his conviction, vacate his sentence, and remand to the trial court for further proceedings.

ERROR PATENT-RIGHT TO COUNSEL VIOLATION
The Defendant was not represented by counsel at the April 25, 1997 hearing to determine his capacity to proceed. At the beginning of the hearing, Barbara Guidry, Judge Michot's secretary, testified that she spoke with the Defendant's attorney, Martin Regan, that morning. According to Ms. Guidry, Mr. Regan acknowledged that there was to be a hearing, but that he would be unable to attend. Mr. Regan indicated that he was trying to reach Randy Lasseigne to stand in for him. The State then asked the trial court if it wished to contact Mr. Lasseigne. The court answered, "I feel like enough has been done as far as that goes." The merits of the hearing were then considered and nothing more was said concerning the Defendant's lack of representation. The Defendant was allowed to ask questions of the only expert who testified at the hearing.
Article 514 of the Code of Criminal Procedure requires the minutes of court to "show either that the defendant was represented by counsel or that he was informed by the court of the defendants' right to counsel, including the right to appointed counsel, and that he waived such right." In State v. Carter, 94-2859 (La.11/27/95); 664 So.2d 367, 372-373, the Louisiana Supreme Court stated the following regarding a defendant's right to counsel:
As correctly noted in Hattaway, the Sixth Amendment right to counsel attaches only after the commencement of adverse judicial criminal proceedings. In the plurality opinion of Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), the Supreme Court held the right to counsel does not attach prior to the "initiation of adversary judicial criminal proceedingswhether by way of formal charge, preliminary hearing, indictment, information, or arraignment."
* * *
Even though the Sixth Amendment right to counsel may have attached, however, it does not exist to protect the defendant at all post-attachment proceedings. The right exists only *192 during those post-attachment, pre-trial confrontations which can be considered "critical stages." In United States v. Wade, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967), the Court described a critical stage as a "critical pretrial confrontation[ ] where the results might well settle the accused's fate and reduce the trial to a mere formality." See also United States v. Gouveia, 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) (A "critical stage" is a pretrial proceeding where "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.") (quoting United States v. Ash, 413 U.S. 300, 310, 93 S.Ct. 2568, 2574, 37 L.Ed.2d 619 (1973)).
Since formal charges had been brought against the Defendant, his Sixth Amendment right to counsel had attached. Thus, the issue in the present case is whether the hearing to determine the Defendant's mental competency to proceed was a "critical stage" in the prosecution. We conclude that it was; indeed, the Defendant's only defense was insanity. His mental competency was the focus of his defense strategy throughout these proceedings.
In Carter, the supreme court summarized the necessary analysis in determining whether a proceeding is a critical stage. It stated:
This determination involves an analysis of `whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice' and includes `any pretrial procedure occurring after the attachment of the right to counsel in which a meaningful defense or a fair trial could potentially be impaired if an uncounselled defendant were subjected to a confrontation by the state.' Hattaway, 621 So.2d at 802 and 809.
Carter, 664 So.2d at 371.
Under this analysis, we find the hearing to determine the Defendant's competency was a critical stage in the proceedings against him. Because the Defendant's competency is in question, his ability to represent himself is also highly questionable. It is difficult to fathom someone with the Defendant's mental problems attempting to intelligently question experts and present cogent evidence at a critical hearing involving competency. Thus, the presence of counsel is essential to ensure the experts presented are confronted as to their findings regarding the Defendant's competency. Without such, the potential exists for an incompetent defendant to be erroneously found competent and forced to withstand trial without being able to assist in his defense.
We have not found any cases discussing whether the hearing to determine the Defendant's sanity is a critical stage of the proceedings. However, two United States Supreme Court cases assist in making this determination. In Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the Supreme Court addressed the issue of whether Alabama's preliminary hearing was a critical stage, invoking the defendant's right to counsel. The Court stated the following regarding the types of proceedings found to be critical stages:
The determination whether the hearing is a "critical stage" requiring the provision of counsel depends, as noted, upon an analysis "whether potential substantial prejudice to defendant's rights inheres in the * * * confrontation and the ability of counsel to help avoid that prejudice."
Id. at 2003.
The Court further stated: "Plainly the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution." Id. at 2003. The court then went on to discuss several ways in which counsel could protect a defendant's rights at a preliminary examination.
Subsequently, in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Court addressed the issue of *193 whether Florida's probable cause hearing was a critical stage in the proceedings. The Court found that "[b]ecause of its limited function and its nonadversary character, the probable cause determination is not a `critical stage' in the prosecution that would require appointed counsel." Gerstein, 95 S.Ct. at 867. The Court distinguished its prior decision in Coleman. The Court noted that a finding of no probable cause at the Alabama preliminary examination could mean the defendant would not be tried at all. On the other hand, Florida's Fourth Amendment probable cause determination affects the defendant's pretrial custody only. Secondly, the Gerstein court noted, "Alabama allowed the suspect to confront and cross-examine prosecution witnesses at the preliminary hearing." Id. at 868. Thus, as noted by the Court in Coleman, the "suspect's defense on the merits could be compromised if he had no legal assistance for exploring or preserving the witnesses' testimony." Id.
The circumstances in the present case are more akin to those in Coleman than Gerstein. The competency proceeding is an adversarial proceeding designed to ensure the defendant receives a fair trial, i.e., one in which he is able to assist his counsel. Defense counsel is allowed to question prosecution witnesses as well as introduce witnesses of his own. If the defendant is found incompetent to proceed, trial will not be held until such a time that the defendant regains competency.
While addressing the question of whether the public should have been permitted access to the hearing to determine a defendant's mental capacity to proceed, the second circuit stated the following:
As provided by LSA-C.Cr.P. Art. 648, if the court determines that the defendant has the mental capacity to proceed, the criminal prosecution shall be resumed. But if the court determines that the defendant lacks mental capacity to proceed, the proceedings shall be suspended and the defendant shall be committed to the custody of the Department of Health and Human Resources or a private institution. Thus, the hearing to determine the defendant's mental capacity to proceed is a critical stage of the prosecution. The determination of the defendant's mental capacity to proceed requires decisions by the court that attract significant public interest and invite legitimate and healthy public scrutiny.
State v. Eaton, 483 So.2d 651, 658 (La.App. 2 Cir.1986).
In accordance with the holding above, we conclude that the hearing to determine the Defendant's competency was a critical stage in the proceedings against him, for which he had the right to counsel.
Normally, the next step in the analysis is to determine whether the Defendant knowingly and intelligently waived his right to counsel. The record in the present case does not indicate that the Defendant was questioned at all concerning a waiver of his right to counsel. Thus, he did not waive that right. Moreover, because of the nature of the proceeding, it is questionable whether a knowing and intelligent waiver could have been obtained.
The final step in the analysis is to determine whether the violation of the Defendant's constitutional right to counsel is subject to the harmless error analysis. According to the United States Supreme Court in U.S. v. Cronic, 466 U.S. 648, 659, n. 25, 104 S.Ct. 2039, 2047, n. 25, 80 L.Ed.2d 657 (1984), the Court has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." The Louisiana courts have also found that the right to counsel is such a fundamental right that it is not subject to the harmless error analysis. State v. Batiste, 96-0526 (La.App. 3 Cir. 12/11/96); 687 So.2d 499, writ denied, 97-0174 (La.6/30/97); 696 So.2d 1003, *194 writ denied, 97-0174 (La. 9/26/97); 701 So.2d 970; State v. Roberts, 569 So.2d 671 (La.App. 2 Cir.1990). In State v. Crawford, 93-2304 (La.App. 4 Cir. 8/23/95); 660 So.2d 950, the fourth circuit found the defendant's total lack of representation at his motion to suppress hearing was reversible error. The court vacated both the defendant's conviction and sentence and remanded the case for a new trial.
The right to counsel in our adversarial system is sacrosanct. The invocation of this right is particularly necessary when dealing with an accused whose mental competency is at the core of the proceedings against him. In this case, the Defendant's total lack of representation at his sanity hearing violated his right to counsel under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Louisiana Constitution. This is reversible error not subject to a harmless error analysis. We, therefore, vacate his conviction and sentence and remand this case to the district court for further proceedings.

CONCLUSION
The hearing to determine the Defendant's competency was a critical stage in the proceedings; thus, the Defendant's right to counsel under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Louisiana Constitution was violated. Such a violation is not subject to the harmless error analysis. Hence, the Defendant's conviction is reversed, his sentence vacated and the case remanded for further proceedings.
CONVICTION REVERSED, SENTENCE VACATED, AND CASE REMANDED TO DISTRICT COURT FOR FURTHER PROCEEDINGS.