BROWN, Chief Judge.
hA two-count bill of information charged defendant, Jackie Delane Blake, with sexual battery and indecent behavior with a juvenile. By a unanimous vote, a jury convicted defendant on both counts. On the first count, sexual battery, defendant was sentenced to serve 99 years at hard labor, with the first 25.years to be served without the benefit of parole, probation or suspension of sentence. On the second count, indecent behavior with a juvenile, defendant was sentence to serve 25 years at hard labor, with at least two years of the sentence to be served without the benefit of parole, probation or suspension of sentence. The sentences. were for the maximum term allowed and were ordered *183 to run consecutively to one another. Defendant now appeals, claiming the evidence was insufficient to prove guilt beyond any reasonable doubt and that the sentences were excessive. We affirm.

Discussion

Sufficiency of the Evidence

At the time of the offense, defendant, Jackie Blake, was 85 years old and the victim, B.M., was a five-year-old girl. The two-count charge stated that both crimes occurred on or about March 19 to April 17, 2013.
The victim was five years old at the, time of the crimes. In April 2013, B.M. told Marjorie Wages, her great-grandmother, who was beginning to prepare a bath, that defendant, who was living with her and her parents in their trailer home at the time, had “kissed her down there and told her to kiss his,’’.but she had refused. B.M. also said that defendant, whom she referred to as “Jackie,” made her watch a pornographic movie while he Rmasturbated. Wages immediately called B.M.’s mother to, notify her of defendant’s behavior.
On April 21, 2013, B.M.’s father called Winnfield Police Officer Brady Attaway. Officer Attaway called the Rapides Child Advocacy Center in Alexandria, Louisiana, and arranged for a forensic interviewer to travel to the Winnfield Police Department to interview B.M.
Ashley Honor, a forensic interviewer with the Rapides Child Advocacy Center, conducted B.M.’s interview on April 25, 2013. During the interview, B.M. told Honor that defendant was “mean to [her]” and “licked [her] tee-tee” while they were in the living room of her home. According to B.M., she was wearing her mother’s skirt and underwear at the time, but defendant moved her underwear to the side in order to lick her vagina. Defendant also made her watch a “bad” movie about “sex” and “white stuff’ or “baby stuff’ came out of defendant’s “pecker.” During her interview, B.M. also told Honor that her four-year-old brother had once climbed on top of her naked and told her to take her clothing off. This videotaped colloquy was played to the, jury and included anatomical drawings in which B.M. identified body parts to which she had referred.
The third statement from the victim was her live testimony at trial which started on September 30, 2014, It is in this testimony that defendant asserts that. “B.M. denied, at least, some of the alleged criminal conduct, by Jackie Delane Blake.” He points out that while B.M. stated in her recorded interview that- he licked her vagina and masturbated in front of her, at trial she denied that- he ever touched or licked her. Additionally, B.M. told |aHonor that she was being rewarded for talking about defendant. B.M. retracted her statement about her brother and said that her parents told her to say things about defendant prior to meeting with Honor. Defendant contends that-someone else may have molested B.M., but notes that Honor failed to ask. B.M. about anyone other than him during the interview.-
The forensic interviewer, Ashley Honor, testified that she believed that B.M. was telling her the truth during the interview. She pointed out--that children who are sexually abused often act out their abuse with other children, which might have explained B.M.’s comments about her younger brother. Honor estimated that at the time of trial, she had interviewed approximately 800 children.
On cross-examination, Honor was asked to read a part of the transcript of B.M.’s interview wherein B.M. stated that she was going to stay with her “Mimi” that evening and that she would get something “[w]hen I tell what Jackie did.” Honor also stated that she did not believe that *184 B.M. had been coached to make the allegations against defendant. Honor admitted that in hindsight she should have asked B.M. if anyone other than defendant had sexually abused her.
B.M. testified at defendant’s trial. She confirmed that she told Honor the truth during her interview in 2013. On cross-examination, B.M. stated that her Mimi gave her a doll after her interview with Honor; however, B.M. explained that she believed that she would have received the doll even if she did not talk about defendant. B.M. denied that her brother touched her inappropriately or got on top of her naked. B.M. explained that defendant 14found a “bad” movie on her mother’s dresser and showed it to her. She said that her parents would not have let her watch the movie. When asked whether anyone had touched her or licked her, B.M. shook her head to indicate “no.” She also shook her head “no” when asked if defendant ever licked her. B.M. shook her head “yes” when asked if she saw “Jackie in that time have white stuff with babies.” When asked if her parents told her to say things about defendant before her interview with Honor, she nodded her head “yes.”
B.M.’s father testified that he met defendant through a friend when defendant needed a place to live and allowed him to stay with his family in March 2013. Defendant would occasionally watch B.M. and her three siblings.. B.M. was the oldest child. Defendant slept on the couch in the living room of the two-bedroom mobile home. The father explained that he owned pornographic DVDs, but they were kept in a case, away from his children.
Lieutenant Chuck Curry accompanied Officer Attaway to arrest defendant. At that time, Lieutenant Curry read defendant his Miranda rights, which defendant waived.[1] Defendant then gave a statement. Lieutenant Curry took notes. Defendant called B.M. “precocious” and “promiscuous,” and he said that she “came onto [him].” He also stated that B.M. would stick her butt in his face and ask him if he wanted to have sex with her. Defendant claimed that B.M. insisted that they watch a pornographic movie. Defendant admitted to being alone with B.M. and | ¡¡sleeping next to her. He described an incident when he was fixing a hot water heater in the bathroom of B.M.’s home while she was taking a bath and said that she was a “distraction” or “test.” Defendant said that he was concerned by the fact that B.M. was “sexually overt” and said that “[he] was going to steal her.” Defendant told Lieutenant Curry that B.M. had told him that her father raped her. We note that Lieutenant Curry acknowledged that B.M. was taken to a hospital for a physical exam which indicated that she had not been raped.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the. fact finder. State *185 v. Pigford, 05-0477 (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
|BLa. R.S. 14:43.1 provides in pertinent part:
A Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:
(1) The offender acts without the consent of the victim.
(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender ...
La. R.S. 14:81 provides in relevant part: A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense; or
(2) The transmission, delivery or utterance of any textual, visual, written, or oral communication depicting lewd or lascivious conduct, text, words, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.
When viewed in a light most favorable to the state, the evidence was sufficient to convict defendant of sexual battery and indecent behavior with juveniles. Marjorie Wages testified at trial that B.M. told her that defendant-had licked her, made her watch a “bad” movie and had ejaculated in front of her. Wages’ testimony is consistent with B.M.’s statement to Honor, a trained forensic interviewer, who believed that B.M. was being truthful during her interview. At trial, B-.M. testified that she told Honor the truth 17during her interview. She also testified that defendant showed her a “bad” movie and that she saw defendant with “white stuff and babies.” B.M.’s father testified that defendant was alone with B.M. and her siblings when the parents went shopping. Lieutenant Curry testified that defendant-made a post-arrest statement calling B.M. “promiscuous” and said that she “came onto” him. Defendant also stated that B.M. was a distraction and that he wanted to “steal” her. Although B.M. nodded her head “no” when asked if defendant licked her, the jury’s decision to accept her earlier statements to both her grandmother and the forensic interviewer is entitled to great' deférence,-'especially considering her youthful age and the inherent stress she felt testifying at trial in the presence of defendant. The jury was permitted to consider B.M.’s recorded interview as substantive evidence of defendant’s guilt because the allegations made during her recorded interview were corroborated by her statement to Wages. See State v. Updite, 47,007 (La.App.2d Cir.02/29/12), 87 So.3d 257; State v. Alfaro, 13-39 (La.App. 5th *186 Cir.10/30/13), 128 So.3d 515, writ denied, 13-2793 (La.05/16/14), 139 So.3d 1024.

Unconstitutionally Harsh and Excessive Sentence

 Defendant complains that his sentences are excessive because they .amount to a life sentence for him. Defendant also argues that based on the weight of the evidence in this matter, the sentences are excessive.
The offense of sexual battery, when the victim is under the age of 13 years and the offender is 17 years of age or older, is punishable by imprisonment at hard labor for not less than 25 years nor more than 99 | «years. At least 25 years of the sentence imposed shall be served without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:43.1.
The crime of indecent behavior with juveniles is punishable by imprisonment at hard labor for not less than two nor more than 25 years when the victim is under the age of 13 and the offender is 17 years of age or older. At least two years of the sentence imposed shall be served -without, the benefit of parole, probation or suspension of sentence. La. R.S. 14:81(H)(2).
The record reflects that the trial court considered the relevant, sentencing factors. The trial court noted its review of defendant’s PSI, which indicated that he was. a seventh felony offender who had failed to comply with any ,pf his prior parole restrictions. The . trial court found, that defendant posed “an obvious threat to the public’s safety and .well being.” The trial court also made mention of the permanent harm that B.M., a five-year-old child, suffered as a result of defendant’s perversions.- Defendant took advantage of a family that had opened up their home to provide him assistance and then attempted to place blame for his crimes on his victim. The trial court also found that defendant’s offenses were separate and distinct from one another and that, given defendant’s criminal history and the nature of his offenses, consecutive sentences were appropriate. State v. Johnson, 42,323 (La.App.2d Cir.08/15/07), 962 So.2d 1126. Given the facts of this case, defendant’s extensive criminal history and the harm done to his very young victim, the sentences imposed do not shock the sense of justice. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980).
Error Patent — Waiver of Sentencing Delay
The record does not show that defendant expressly waived the delay for the imposition of.sentence upon the denial of his motion for a new trial. However, defendant has not complained about the sentencing delay and thus the error appears harmless. See State v. Roberson, 40,809 (La.App.2d Cir.04/19/06), 929 So.2d 789.

Conclusion

For the reasons stated above, defendant’s convictions and sentences are affirmed.

. Defendant’s signed waiver of rights form was admitted into evidence as State’s Exhibit No. 3.