WINDHORST, J.
Defendant, Roy Dixon, appeals his convictions of production of pornography involving juveniles under the age of thirteen (count one) and sexual battery upon a juvenile under the age of thirteen (counts two and three). For the reasons that follow, we affirm defendant's convictions, vacate defendant's sentences, and remand this matter for resentencing in accordance with instructions.
Facts and Procedural History
On March 26, 2013, defendant was charged by bill of information with one count of production of pornography involving juveniles under the age of seventeen in violation of La. R.S. 14:81.1 (count one), and with two counts of sexual battery upon a juvenile under the age of thirteen in violation of La. R.S. 14:31.1 (counts two and three). Defendant pled not guilty on all counts on April 14, 2013. On September 24, 2013, defense counsel filed a motion for the appointment of a sanity commission, which was granted by the trial court. On November 11, 2013, the trial court conducted a competency hearing and found defendant competent to proceed to trial. On May 16, 2016, the State amended the bill of information to reflect the correct date of the offense on all counts. The bill of information was further amended on May *833 15, 2017, correcting the offense in count one to production of pornography involving a juvenile under the age of thirteen.
On May 16, 2017, a twelve-person jury found defendant guilty on all counts. On May 17, 2017, defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal, which the trial court denied. On August 24, 2017, defendant was sentenced to 20 years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count one, and 99 years at hard labor without the benefit of parole, probation, or suspension of sentence on counts two and three, with all counts to be served concurrently. Defendant filed a motion to reconsider sentence which was denied. This appeal followed.
Facts
Defendant was often the caretaker of his two-year old sister, L.D.,[1] when his mother, C.D., worked. On January 26, 2013, while watching L.D., defendant invited Rayan Badeaux, a man he met on the Internet, to his house located at 1402 Hancock Street in Gretna, where defendant engaged in sexual intercourse with Mr. Badeaux. Afterwards, defendant left the room to check on L.D. While defendant was out of the room, Mr. Badeaux looked through defendant's cell phone and located a video of a young toddler and an adult male who was touching the toddler's vagina. Mr. Badeaux immediately left defendant's house with defendant's cell phone and went to the New Orleans Police Department's (NOPD) Fourth District Station in New Orleans. Because the aforesaid residence is located in the City of Gretna, the Gretna Police Department was contacted regarding the pornographic video on the cell phone.
Detective Jeffrey Laborie[2] with the Gretna Police Department met Mr. Badeaux at NOPD and obtained the cell phone from him. Mr. Badeaux showed Detective Laborie one video of a small female toddler, approximately one or two years old, with a pacifier in her mouth. The video showed a female toddler who was unclothed, and an adult man's hand touching her vagina. Detective Laborie testified that he believed, based on experience, that there was additional contraband on the cell phone.
During his investigation, Detective Laborie developed a potential suspect, "Allen," and went to 1402 Hancock Street where he spoke with C.D. about the cell phone and the number associated with it. C.D. told him that the cell phone belonged to her son, Roy, not "Allen." C.D. stated that she confronted defendant about videos on his phone, and told defendant that he was no longer welcome at her house. At that point, defendant became the potential suspect. While speaking with C.D., defendant approached the residence on his bicycle. Detective Laborie noticed that defendant was wearing the same clothing and matched the description he was previously given. Based on his corroborated observation, Detective Laborie approached defendant. Defendant appeared upset and was crying. Defendant spontaneously stated that he wanted to tell his side of the story. Detective Laborie transported defendant to the police station and placed him in a holding cell. While defendant was in the holding cell, Detective Laborie wrote his report in a nearby room equipped with a *834 monitor which allowed him to view and hear defendant. Detective Laborie overheard defendant crying and saying to himself, "I'm so stupid. I can't believe I did that. I'm so lazy. I should have deleted those files. I lost my family. I will never be able to make up for this." Detective Laborie transcribed this statement "word for word" into his report as defendant was talking. At that point, Detective Laborie turned over his investigation to Sgt. Lewis Alvarez, who was a detective at the time.
Before interviewing defendant, Sgt. Alvarez obtained a search warrant for defendant's cell phone, on which three videos were found. Sgt. Alvarez stated that it was too dark to see anything on the first video. The second video depicted a black adult male's penis ejaculating on a toddler's vagina. The third video showed a black adult male's hand "playing with [toddler's] vagina." Sgt. Alvarez testified that he believed that there was more contraband on the phone, and he brought defendant from the holding cell to interview him. After being advised of his Miranda [3] rights, defendant agreed to voluntarily give a recorded statement. In his statement, defendant admitted to "sexting" "Brad Howard,"[4] who asked him about his family. Defendant told Brad about his sister, L.D., and her age. Brad wanted defendant to touch L.D.'s vagina and ejaculate on her on video, and to send the videos to him. Although defendant initially refused, defendant stated that he did take the videos of L.D. as Brad requested. Defendant stated that he "knew it was wrong" but he wanted to keep communicating with Brad, and believed that if he did as requested, Brad would continue sending him photographs and videos of himself. Defendant stated that one video depicted him rubbing the outside of L.D.'s vagina with his finger. In a third video, he was rubbing L.D.'s vagina, but the lighting was too dark. He stated that he did not "insert" his finger into her vagina. Defendant also stated he took a video of himself ejaculating on L.D. Both videos were done in his mom's house located 1402 Hancock Street while he was changing L.D.'s diaper, and were sent to Brad. After further questioning, defendant also admitted to taking and sending approximately ten pornographic photographs of L.D.'s vagina to Brad, including one in which defendant inserted a Q-tip into L.D.'s vagina.
When defendant was asked if he inserted his penis into L.D., defendant stated emphatically that he "never" put his penis in her vagina or anus, and "never" licked either. Defendant stated that he knew what he did was not right because L.D. could not protect herself, but stated that he did not hurt her. Defendant stated that he was "in jail because of the stuff that was on my memory card that I thought I deleted."
After his statement, defendant was placed under arrest. Sgt. Alvarez went to 1402 Hancock Street to locate L.D. and meet with C.D. He observed a toddler that was one or two years old, and learned that L.D. was born February 20, 2011, which corroborated what he was told by defendant.[5]
*835 Discussion
In his first assignment of error, defendant contends for the first time on appeal that his counsel failed to provide effective assistance of counsel at a critical stage in the proceeding against him. Specifically, defendant contends that counsel was ineffective when he participated in his competency hearing by telephone.
A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. To prove ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient, and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Defendant contends that he was denied counsel during a critical stage of the proceedings and that prejudice should be presumed under United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Defendant contends that a competency hearing is a critical stage of the proceeding and counsel's failure to be physically present in court for the hearing constitutes prejudice under Cronic and State v. Haider, 00-231 (La. App. 3 Cir. 10/11/00), 772 So.2d 189.[6] Defendant also contends that he was denied ineffective assistance of counsel because he was not able to meaningfully interact with his counsel.
In Cronic, the Supreme Court established that in limited circumstances prejudice could be presumed and the Strickland test would not be applicable. Cronic, 466 U.S. at 658, 104 S.Ct. at 2046. Prejudice may be presumed when a defendant is completely denied counsel at a critical stage of proceedings. Id. at U.S. at 659, 104 S.Ct. at 2047.
In Wright v. Van Patten, 552 U.S. 120, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008), the United States Supreme Court held that an attorney participating in a hearing via telephone, although physically absent, does not necessarily deny a defendant's right to counsel. The Supreme Court rejected the defendant's argument that counsel's telephone participation should be treated as a "complete denial of counsel," and held that counsel's participation by telephone did not constitute the complete denial of counsel as contemplated under Cronic. Id.
In the case before us, defendant's counsel participated via telephone at defendant's competency hearing, and thus defendant was not completely denied counsel as contemplated under Cronic. Therefore, Strickland governs this ineffective assistance of counsel claim.
Based on a review of the record, defendant failed to establish that counsel was ineffective under Strickland 's two-prong test. Counsel actively participated in defendant's competency hearing, albeit by telephone. Defendant's counsel stated he received the doctor's report the day *836 before and he reviewed it, even though he did not have time to discuss it with defendant. The report's contents provided that there were no grounds to find defendant incompetent and that he was competent to proceed with trial. Counsel joined the State's stipulation that if Dr. Rafael Salcedo and Dr. Richard Richoux were called to testify, they would qualify as experts in psychology and would testify consistently with the contents of their report. The trial court asked defendant if he understood the stipulation and he responded that he understood. Based on the joint stipulation, the trial court accepted the report into evidence and found defendant competent to proceed to trial. This Court also notes that defendant's motion for competency did not contain a memorandum or any facts supporting a theory of defendant's alleged incompetence. Further, defendant does not contend that if defense counsel had been physically present, the outcome would have been different. Under the circumstances of this case, we find that defendant was not prejudiced or denied effective assistance of counsel by counsel's participation in the competency hearing via telephone.
In his second assignment of error, defendant contends that the trial court erred by imposing excessive sentences on all three convictions. Defendant contends that while the facts of the offense are disturbing, (1) these offenses are not the worst in their class of offenses; (2) he is not the worst offender; (3) he is young; and (4) he is a first felony offender. Therefore, defendant contends maximum sentences are not appropriate. In his third assignment of error, defendant contends that the trial court erred in denying his motion to reconsider sentence.[7]
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Horne, 11-204 (La. App. 5 Cir. 2/14/12), 88 So.3d 562, 569, writ denied, 2012-0556 (La. 06/01/12), 90 So.3d 437 ; State v. Nguyen, 06-969 (La. App. 5 Cir. 04/24/07), 958 So.2d 61, 64, writ denied, 2007-1161 (La. 12/07/07), 969 So.2d 628. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hill, 12-495 (La. App. 5 Cir. 12/18/12), 106 So.3d 1209, 1212 ; State v. Lawson, 04-334 (La. App. 5 Cir. 09/28/04), 885 So.2d 618, 622, writ denied, 2005-0244 (La. 12/09/05), 916 So.2d 1048.
When imposing sentences, a trial court has vast discretion in imposing a sentence within statutory limits. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7, 16-17. An appellate court cannot set aside a sentence as excessive absent a manifest abuse of discretion. Id. On appeal, the issue is not whether a different *837 sentence might have been more appropriate, but whether the trial court abused its vast discretion. Id.; State v. Bonilla, 15-529 (La. App. 5 Cir. 02/24/16), 186 So.3d 1242, 1261, writ denied, 2016-0567 (La. 05/02/16), 206 So.3d 881. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332, 07-333, 07-539 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. Maximum sentences are generally reserved for cases involving the most serious violations of the offense charged and the worst type of offender. Id. In determining whether a sentence is excessive, an appellate court considers: (1) the nature of the crime; (2) the nature and background of the offender;[8] and (3) the sentences imposed for similar crimes by the same and other courts. State v. Le, 98-1274 (La. App. 5 Cir. 06/30/99), 738 So.2d 168, 171, writ denied, 2000-2174 (La. 04/12/01), 789 So.2d 587.[9]
Sexually Battery of a Juvenile Under the Age of Thirteen (counts two and three) :
While we do not discount the seriousness of this offense or condone the repugnant behavior of defendant, we find that the trial court abused its sentencing discretion and that defendant's 99-year sentences for his convictions for sexual battery of a juvenile under the age of thirteen (counts two and three) under these facts and this first-time offender are constitutionally excessive. We find that defendant's conduct does not fit the class of the most serious violations of the offense charged, nor is he considered to be the worst type of offender committing the charged offense, which are necessary for the imposition of a maximum sentence. As discussed herein, we explain our reasons based on the application and consideration of each of the three factors used to determine whether a sentence is constitutionally excessive.
In addressing the first factor, the nature of the crime, this Court has held that a maximum, or nearly maximum sentence for sexual battery of a minor may not be excessive if a defendant exploits a position of trust to commit the crime. State v. Wilmot, 13-994 (La. App. 5 Cir. 05/14/14), 142 So.3d 141, 149 (citing *838 State v. Badeaux, 01-406 (La. App. 5 Cir. 09/25/01), 798 So.2d 234, writ denied, 2001-2965 (La. 10/14/02), 827 So.2d 414 ). The evidence established that defendant appeared to have a good, trusting relationship with L.D., because he often watched her when his mother was working. C.D. testified that she trusted defendant with L.D. and there were times when defendant was L.D.'s caretaker. The facts of this case, however, are extremely different from those of Wilmot, which involved heinous ongoing abuses. We also find that the other factors, as discussed below, weigh heavily against a maximum sentence for this defendant under these particular circumstances.
In this circuit, Wilmot, supra, is the only case in which a defendant, with no previous criminal record, was convicted of sexual battery of a juvenile under the age of thirteen, and yet was sentenced to the maximum of 99 years hard labor. Wilmot involved abuses which were particularly abominable and horrifying, and the sexual abuse continued for several years. In that case, the victim was six years old when defendant started sexually abusing the victim, including acts of oral, anal, and vaginal sex with his mouth and penis. Id. at 145. Defendant was living with the victim's mother, his girlfriend, and the victim. Id. After his arrest, defendant gave a voluntary statement to police admitting to oral and vaginal sex with the victim, but maintained that the sexual contact was initiated by the victim. Id. At trial, defendant denied any sexual contact with the victim. Id. Defendant was found guilty of aggravated rape and sexual battery of a juvenile under the age of thirteen. Id. at 144. Wilmot was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the aggravated rape conviction, and 99 years on the sexual battery of a juvenile under the age of thirteen. Id.
In Wilmot, this Court affirmed defendant's 99-year sentence for sexual battery of a juvenile under the age of thirteen. Id. at 149. In finding that the trial court did not abuse its discretion, this Court considered the facts of the case, specifically: (1) the victim was six when the sexual abuse began; (2) the abuse lasted for several years; (3) the victim looked at defendant as a father figure; (4) a letter from the victim stating how the sexual abuse negatively impacted her and her family; and (5) a letter from the victim's mom regarding the impact on victim's life. Id. Considering the circumstances, this Court found that the trial court did not abuse its discretion in imposing the maximum sentence. Id. It was also noted that defendant received a mandatory life sentence without benefit of parole, probation, or suspension of sentence on his aggravated rape conviction; therefore, the "imposition of the ninety-nine year sentence for sexual battery will not practically affect the duration of defendant's sentence." Id. While two acts in this case are disgusting, the acts committed by Wilmot, for which his maximum 99-year sentence was upheld, inflicted years of torture, and were many times worse.
Jurisprudence from other Louisiana circuits confirms that maximum sentences or near maximum sentences are reserved for crimes where the nature of the crime is one of long-term repeated abuse of the victim. See State v. Morgan, 97-997 (La. App. 3 Cir. 02/04/98), 706 So.2d 1084, 1086-1087 (defendant was sentenced to the maximum sentence, at that time, for abusing two young victims, one of whom had a mental disability, and the court found that the sentence was not excessive); State v. Penn, 93-0174 (La. App. 1 Cir. 11/24/93), 633 So.2d 337, 337-338 (defendant, a teacher at victim's school, was sentenced to the near maximum sentence at that time, for indecent behavior with a juvenile, after eight months of daily abuse which included *839 teaching the twelve-year-old victim to masturbate, kissing the victim, fondling the victim's breasts and vaginal and oral sex).
Considering defendant's lack of any prior criminal record, that he apparently had never done anything like this before, and other circumstances of this case, we do not believe defendant is typical of sexual offenders who receive the maximum sentence. Unlike the facts in Wilmot, supra, there is no history of long term, repeated abuse by defendant towards L.D. Additionally, while defendant admitted in his statement to taking the photographs and videos of L.D., he was adamant that he did not penetrate L.D. with his mouth or penis orally, anally, or vaginally. There is nothing in the record which indicates anything to the contrary. Defendant, a young, homosexual male, stated that he knew what he was doing was wrong, but he took the photographs and videos and sent them to Brad in exchange for photographs and videos of Brad himself.
As to the second factor, the nature and background of the offender, defendant had no prior felony criminal record. Defendants with extensive criminal records are more likely to receive a maximum or near maximum sentence for sexual battery of a juvenile under the age of thirteen. In State v. Blake, 50,732 (La. App. 2 Cir. 06/22/16), 198 So.3d 181, at 185,[10] the Second Circuit found that defendant's 99-year sentence for sexual battery of a juvenile under the age of thirteen was not excessive because, among other factors, Blake was a seventh felony offender, and had failed to comply with any of his prior parole restrictions.
Defendants with less extensive criminal records than the defendant in Blake, supra, generally receive sentences above the statutory minimum of 25 years, but less than the maximum sentence. In State v. Pontiff, 14-1049 (La. App. 3 Cir. 05/06/15), 166 So.3d 1120, 1149-1152, defendant's sentence of 35 years for sexual battery was affirmed after considering the facts of the case and the PSI report which showed that defendant had a previous conviction of indecent behavior with a juvenile and conviction for simple burglary. In State v. Evans, 48,471 (La. App. 2 Cir. 12/18/13), 130 So.3d 965,[11] defendant's sentence of 50 years at hard labor, with the first twenty-five without the benefit of parole, probation, or suspension of sentence, was affirmed after considering a PSI report, which revealed two prior felony convictions for contributing to the delinquency of juveniles and molestation of juveniles, three prior misdemeanor convictions and fourteen previous arrests. In Badeaux, 798 So.2d at 239, defendant's maximum sentence was affirmed, but at that time, the maximum sentence was ten years at hard labor for sexual battery. Defendant was a first felony offender, but according to PSI report, defendant was previously accused of molesting *840 his former stepdaughters and defendant's brother testified that defendant was "an exhibitionist, pedophile, and a manic-depressant." In State v. Firth, 30,555 (La. App. 2 Cir. 04/08/98), 711 So.2d 388, 389-92, defendant pled guilty and his maximum sentence, at the time, of ten years at hard labor for the sexual battery of a seven-year old male after twice inserting his finger in the child's anus was affirmed in part because of defendant's two prior felony convictions, which included one conviction for sexual battery of a five-year old, and two misdemeanor convictions for theft and burglary. Again, while the maximum sentence in Badeaux was affirmed, it was only ten years at the time.
In addressing the third factor, sentences imposed for similar but somewhat more serious crimes by defendants convicted for crimes involving limited instances of abuse by offenders who have no criminal record, received sentences between 35 to 45 years. In State v. Lilly, 2012-0008 (La. App. 1 Cir. 09/21/12), 111 So.3d 45, 49-50,[12] the court affirmed a fifty-seven year old defendant's first felony offender's conviction and sentence of 35 years at hard labor without benefit of parole. In State v. Greenberry, 2014-0335 (La. App. 4 Cir. 11/19/14), 154 So.3d 700, 703-706, the defendant's conviction for two counts of touching the vagina of his live-in girlfriend's ten-year old daughter and sentence of 45 years at hard labor, with the first twenty-five years without benefits, was affirmed. In State v. Redfearn, 44,709 (La. App. 2 Cir. 09/23/09), 22 So.3d 1078, 1082, 1088-1089,[13] the defendant's sentence of 40 years at hard labor, with the first 30 years without benefit of parole, probation, or suspension of sentence for touching his five-year old victim's vagina with his penis and finger, was affirmed.
Considering the above factors, the jurisprudence, and the particular facts in this case, we find the evidence does not support a conclusion that this crime was the most serious violation of the offense charged, and that it was committed by the worst type offender. While we do not condone or excuse defendant's disgusting behavior, we do not believe defendant is a typical sex offender of these classes. At the time of the offense, defendant was a young homosexual male adult, who appears to have performed these repugnant acts on his sister solely in exchange for nude photographs of an individual named Brad. Defendant admitted to taking the photographs and videos of L.D. wherein he touched her vagina with his hand and ejaculated on her, but did not touch or penetrate L.D. with his mouth and/or penis. Defendant has no prior felony criminal record, he graduated from high school and was gainfully employed at the time of the instant offense. Under the atypical facts of this case, defendant's maximum sentence of 99 years without the benefit of probation, parole, or suspension of sentence is grossly disproportionate to the offense *841 charged, and far greater than other affirmed sentences for more serious crimes, or committed by multiple offenders, or both. Therefore, we vacate defendant's sentences for sexual battery of a juvenile under the age of thirteen (counts two and three) and remand this matter for resentencing.
Pursuant to La. C.Cr.P. art. 881.4A, this Court may provide direction regarding a constitutionally reasonable sentence in a given case. Considering the factors enumerated above and the unique facts of this case, we suggest that a sentence of thirty-five to forty years imprisonment at hard on counts two and three to run concurrently with defendant's sentence on count one would be the longest sentence we could conclude to be not constitutionally excessive on appeal.
Production of Pornography Involving Juvenile Under the Age of Thirteen (count one):
Defendant was sentenced to 20 years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence for production of pornography involving juvenile under the age of thirteen. At the time of this offense, La. R.S. 14:81.1E(5)(b) provided that offenders over the age of seventeen who produced pornography involving juveniles under the age of thirteen shall be imprisoned at hard labor for not less than 25 years nor more than 99 years, with at least twenty-five years without the benefit of parole, probation, or suspension of sentence.[14] Therefore, we find defendant's 20-year sentence for production of pornography involving juvenile under the age of thirteen to be illegally lenient.
Appellate courts may correct an illegal sentence at any time. La. C.Cr.P. art. 882. However, illegally lenient sentences may be corrected only on appeal by the state, or when such illegality is discoverable by mere inspection of the pleadings. State v. Kelly, 2015-0484 (La. 06/29/16), 195 So.3d 449. Defendant's sentence is illegally lenient in that it does not comply with the statutory minimum sentence of 25 years, thus, this defect is discoverable by mere inspection of the record. Therefore, defendant's sentence for production of pornography involving a juvenile under the age of thirteen is hereby vacated, and the matter is remanded to the trial court for resentencing in accordance with the statutory range of La. R.S. 14:81.1E(5)(b).
In accordance with La. C.Cr.P. art. 881.4A, and considering the facts of this case as stated above, we suggest that a sentence of 35 to 40 years imprisonment at hard labor for the conviction of production of pornography involving a juvenile under the age of thirteen, to run concurrently with defendant's sentences for sexual battery, would not be constitutionally excessive.
*842 Errors Patent Discussion
The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920 ; State v. Oliveaux, 312 So.2d 337 (La. 1975) ; and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). The following errors patent require correction.
We find there are discrepancies between the Louisiana Uniform Commitment Order (UCO), the commitment, and the transcript. If "there is a discrepancy between the minutes and the transcript, the transcript must prevail." State v. Lynch, 441 So.2d 732, 734 (La. 1983).
The UCO reflects the offense date as August 1, 2012, when the record reflects that the offense dates were on or between July 1, 2012 and January 26, 2013. Additionally, the commitment and UCO reflect that defendant was convicted of pornography involving juveniles under the age of thirteen. However, the record and evidence show that defendant was charged by bill of information with, and convicted of, production of pornography involving juveniles under the age of thirteen. This Court has previously remanded a case for correction of the commitment and the UCO in its error patent review. See State v. Lyons, 13-564 (La. App. 5 Cir. 1/31/14), 134 So.3d 36, writ denied, 2014-0481 (La. 11/07/14), 152 So.3d 170 (citing State v. Long, 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 ). Accordingly, we remand this matter and hereby order the district court to correct the noted discrepancies in the UCO and commitment. Further, the Clerk of Court for the Twenty-Fourth Judicial District Court is ordered to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892B(2) and the Department of Corrections' legal department. See Long, supra (citing La. C.Cr.P. art. 892B(2) ).
Conclusion
For the reasons stated herein, defendant's convictions are affirmed, his sentences are vacated, and this matter is remanded for resentencing and compliance with this Court's instructions.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED

To preserve the confidentiality of the minor victim's identity in this case, the victim, the victim's family members, and other related witnesses will be referred to by their initials. La. R.S. 46:1 ; 844 W.

Detective Laborie testified that he was a patrol officer at the time of the incident.

Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

Sgt. Alvarez testified that they subsequently learned that defendant was referring to Brad Case, not "Brad Howard," who pled guilty to distribution of child pornography in April 2013.

Sgt Alvarez obtained another search warrant for the Samsung cell phone requesting a "dump of the phone." A search warrant was also obtained for 1402 Hancock Street for any additional electronic devices belonging to defendant. A laptop was located in defendant's bedroom and a search warrant was obtained for its contents. The Samsung cell phone and laptop were sent to the digital forensics unit.

In Haider, supra, the court found that defendant's competency hearing was a critical stage in the prosecution in which defendant was entitled to a right to counsel because defendant's only defense was insanity. Haider, 772 So.2d at 192. Defendant's mental competency was the focus of his defense trial strategy throughout the proceedings. Id. Defendant was prejudiced under Cronic by counsel's complete failure to attend the hearing and thus, his right to counsel under the Sixth Amendment of the United States Constitution and Article 1, § 13 of the Louisiana Constitution was violated. Id. at 193-194. The court found reversible error and vacated defendant's conviction and sentence and remanded for further proceedings. Id. at 194.

In his motion to reconsider sentence, defendant contended that his sentence was "excessive and improper in violation of the Constitution of the State of Louisiana and the United States Constitution." A motion to reconsider sentence must set forth specific grounds upon which the motion is based. La. C.Cr.P. art. 881.1. The failure to state the specific grounds upon which a motion to reconsider is based precludes a defendant from raising issues relating to statutory errors or deficiencies, such as compliance with C.Cr.P. art. 894.1, and limits a defendant to review of the sentence for constitutional excessiveness only. State v. Hunter, 11-787 (La. App. 5 Cir. 4/24/12), 94 So.3d 797, 800. Here, defendant only argued that his sentences were constitutionally excessive. Thus, defendant is limited to a review of each sentence for constitutional excessiveness.

The United States Supreme Court held that it is " 'Highly relevant-if not essential-to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offenses, but the individual defendant.' " Pepper v. United States, 562 U.S. 476, 488, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196 (2011) (internal citations omitted), quoting Wasman v. United States, 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed. 2d 424 (1984).

The trial court uses a different criteria to determine the length of a sentence. First, the trial court must consider the aggravating and mitigating circumstances enumerated in La. C.Cr.P. art. 894.1. State v. Evans, 48,471 (La. App. 2 Cir 12/18/13), 130 So.3d 965, 967. There are two requirements to be considered. The first is La. C.Cr.P. art. 894, specifically, "the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation." Evans, 130 So.3d at 967. The second requirement is that the sentence must not be so grossly out of proportion with the offense that it represents nothing more than a purposeless infliction of pain and when viewed from the light of harm to society, it shocks the sense of justice. Id. Here, the trial court complied with the requirements of La. C.Cr.P. art. 894.1 by considering defendant's lack of remorse and responsibility for committing the offense (defendant's statement), the age of L.D., stating that a PSI was ordered, and the videos which the trial court stated were the "most disturbing thing that I have ever seen and the jurors certainly shared that" opinion.

In Blake, the victim was five years old at the time of the abuse. Blake, supra. The victim stated that the defendant "kiss[ed] her down there," "licked [her] tee-tee," and made her watch a pornographic movie with him while he masturbated. Id. Defendant was a friend of the victim's father that was staying with the family. In considering defendant's extensive criminal record, the court found that defendant posed "an obvious threat to the public's safety and well-being." Id. Thus, the court found that considering "defendant's extensive criminal history and the harm done to his very young victim, the sentences imposed do not shock the sense of justice." Id.

In Evans, the defendant was 51 years old and the father of the victim, who was six-years old. Evans, supra. Evidence showed that defendant touched victim between her legs on her private area, "coo-coo," with his hands and his "thing," and put his "thing" in her mouth. Id. The victim was examined at the hospital and it was noted that she had redness and swelling on her external genitalia and her hymen was completely missing. Id.

Defendant and his wife were babysitting his wife's grandchildren, when defendant touched the four-year old victim's vagina with his fingertip one time during a hug. Defendant gave a statement that he touched the victim, but at trial stated the police coerced him into making the statement. Lilly, supra.

In Redfearn, the mother walked in on the defendant/father naked on top of their five year old victim/daughter. Testimony established that defendant touched victim with his penis and finger while there two young boys were in bed watching. Redfearn, supra. Trial court considered the PSI report, defendant's use of Lortab and Xanax and drinking day of incident, defendant's lack of remorse and belief he did not do anything wrong, lack of criminal record, and court noted that defendant was watching pornographic DVDs prior to the crime. Id. On appeal, the court found that sentence was not excessive because it was less than half the maximum sentence. Id.

R.S. 14:81.1, in pertinent part:
* * *
E(4) Whoever engages in the promotion, advertisement, or production of pornography involving juveniles shall be fined not more than fifteen thousand dollars and be imprisoned at hard labor for not less than ten years or more than twenty years, without benefit of probation, parole, or suspension of sentence.
(5) * * *
(b) Whoever commits the crime of pornography involving juveniles punishable by the provisions of Paragraph (4) of this Subsection when the victim is under the age of thirteen years, and the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.